Argued and submitted May 17, affirmed December 4, 1985

In the Matter of the Tax Rate Assessment of
Western Graphics Corporation.

### EMPLOYMENT DIVISION,
*Petitioner,*

*v.*

### WESTERN GRAPHICS CORPORATION,
*Respondent.*

(TR-84-3; CA A33661)

710 P2d 788

Jeff Bennett, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Kathy A. Peck, Salem, argued the cause for respondent. With her on the brief was Williams & Zografos, P.C., Salem.

Before Buttler, Presiding Judge, and Warden and Van Hoomissen, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this unemployment insurance tax case, the Employment Division seeks review of the referee's decision which held that the Division was equitably estopped from assessing a tax against Western Grapics (employer) in excess of 4 percent of its taxable payroll. We affirm.

In 1982, the Oregon Legislature enacted the Shared Work Plans Law, Or Laws 1982 (Special Session), ch 2. That program provided employers with an alternative to employe layoffs. A participating employer could reduce the hours worked for a group of employes by the same number of work hours that would have been affected through a layoff. The wages of those in the work group would be supplemented by unemployment benefits. For example, if a participating employer planned to lay off two 40-hour per week employes, for a savings of 80 hours per week, the program permitted the employer to reduce the working hours of a group of employes by 80 hours and to distribute the time equally among the employes in that group. If the group consisted of ten employes, each would have his 40-hour work week reduced by eight hours. Each would then receive unemployment benefits equal to one-fifth of what the benefits would have been if there had been a lay off. A participating employer would not be permitted to lay off employes in the work group. In theory, the employer, the employes and the state would benefit under the plan.

In July, 1982, after consulting with the Division expert on the program, employer applied and was approved for participation in a shared work plan. Because employer eventually was forced to lay off employes, it dropped out of the program in November, 1982. In November, 1983, it received notice that, as a result of the benefits paid its employes while it was participating in the shared work plan, its 1984 employer tax rate had increased to 7 percent of its taxable payroll, the maximum tax rate applicable to participating employers. If it had not been participating, the maximum tax rate would have been 4 percent. Employer requested a hearing, and the referee held that Division was estopped from assessing a tax in excess of 4 percent, because it had misled employer as to the adverse tax consequences of its participation in the plan and because

employer had relied to its detriment on the information it had received from the Division.

Division does not dispute the findings of the referee. Employer's vice-president, Hamaker, first learned of the program in June, 1982. Shortly thereafter, he requested information from the Division and received Department of Human Resources, Employment Division, Publication 62 (6-82), entitled "WORK SHARE . . . Business and the State of Oregon working together to reduce layoffs." Under the section entitled "Disadvantages," the pamphlet advised:

"Unemployment insurance tax rates could be adversely affected *if more benefits are paid out than would have been in the case of a layoff.*" (Emphasis supplied.)

Another section, entitled "Questions and Answers," included the following:

"Q    What can happen to the employer tax rate?

"A    Work share will not affect the current tax rate. Future tax rates may be adversely affected *if more benefits are paid out under work share than would have been in a layoff.*" (Emphasis supplied.)

Hamaker was interested in the program; however, he was concerned about the effect the plan might have on employer's tax rate, so he contacted the corporation's regular consultant in employment tax matters, Shuck. Shuck was not familiar with the details of the program, so he arranged for a meeting with Richey, Division's administrator of the work share program. Shuck attended with Hamaker. Although Richey had no recollection of a meeting, and no written records were kept, the referee found that the three met in Salem to discuss the tax consequences of participation in a shared work plan. Shuck and Hamaker remembered specifically asking Richey whether a participating employer's tax rate would be calculated in the usual manner and specifically recalled being advised that it would. Neither Shuck nor Hamaker recalled being advised that an employer's tax rate could increase beyond the maximum tax rate applicable to nonparticipating employers. The referee found that they were not so advised. Neither Shuck nor Hamaker anticipated a significant tax increase for employer, although they were aware that the company's taxes could go up somewhat within

the existing limitation. As a matter of law, however, participation in the program automatically subjected an employer to a possible maximum tax rate of 7 percent of its taxable payroll, rather than the 4 percent maximum tax rate applicable to nonparticipating employers.[1]

The rate of unemployment insurance tax is the same as an employer's "benefit ratio," which is calculated by dividing the unemployment benefits received by employes by the amount of taxable payroll. In 1981, Western Graphics' benefit ratio was 3.1 percent. The maximum tax rate for that year was 3.8 percent, and employer paid only 3.1 percent. In 1984, the first year in which employer's tax rate was affected by its participation in the plan, the maximum tax rate for nonparticipating employers was 4 percent. Participating employers, on the other hand, were to pay no less than their benefit ratio, with a maximum tax rate of 7 percent. Employer's benefit ratio was 8.7398 percent. Simply by virtue of its participation in the shared work plan, employer's tax rate jumped to 7 percent, 75 percent higher than it would have been had it not participated. Employer does not dispute the calculation of the tax, or the accuracy of the tax amount, but seeks to be relieved of the assessment in excess of 4 percent.

■ ■ Division concedes that the doctrine of equitable estoppel is applicable against the government under certain circumstances. The occasions are rare, especially as against taxing authorities, *Johnson v. Tax Commission,* 248 Or 460, 435 P2d 302 (1967), and it should be applied cautiously. Equitable estoppel will be applied against an agency only if it is shown that the person asserting it was misled by the agency and justifiably and detrimentally relied on the misleading

---

[1] Oregon Laws 1982 (Special Session), chapter 2, section 12, provides:

"Notwithstanding ORS 657.462, an employer who had an approved shared work plan at any time during the six calendar quarters preceding and ending on the computation date, under which shared work benefits were paid to employes of the employer for weeks which occurred during such six-quarter period, shall not receive a tax rate that is less than the employer's benefit ratio, expressed as a percentage rounded to the nearest 10th of one percent. However, the rate shall not be more than 3.0 percentage points higher than the maximum rate of the schedule in effect for the next calendar year."

There is no dispute that the Shared Work Statute, including section 12, was filed with the Secretary of State on February 2, 1982, but was not published in the Oregon Revised Statutes until after employer had entered the work share program.

conduct. *See Pilgrim Turkey Packers, Inc. v. Dept. of Revenue,* 261 Or 305, 493 P2d 1372 (1973).

Division argues that the doctrine may be applied only in cases where the individual asserting estoppel has been deprived of a benefit that would have been received but for the government's misleading conduct. In *Thrift v. AFSD,* 58 Or App 13, 646 P2d 1358 (1982), we so stated and held that the claimant was not entitled to keep a double payment of public assistance benefits, even though an employe of the Adult and Family Services Division had advised her erroneously that it was hers. We declined to award the petitioner a windfall as a result of the government's mistake and erroneous advice. Division correctly points out that, in most of the cases that have considered the issue of estoppel, the party asserting it would have received a benefit but for misleading conduct. *Pilgrim Turkey Packers, Inc. v. Dept. of Revenue, supra; Johnson v. Tax Commission, supra.* Here, Division reasons, employer applied for the program and voluntarily participated in it. No benefits were lost; employer is simply required to pay at the higher tax rate by virtue of its participation.

As an abstract proposition, Division may be right. However, the argument overlooks the fact that employer was interested in the program only if it would be benefitted by participating in it. Because it was led to believe reasonably that the worst that could happen would be a slight increase in its unemployment tax to the maximum rate applicable to all employers, it would benefit by keeping valuable employes on its payroll on a reduced work week and by not having to lay off any employes. In other words, as it reasonably understood the plan, as explained by Division, it would have benefitted. Instead, employer argues, it participated in a program that was very nonbeneficial to it for reasons that would have been apparent before it became a participant and would have caused it to reject the plan had it not been misled.

■       If employer decided to participate as a result of misleading and incomplete information provided by Division, and if employer justifiably relied on that information, we see no reason why the doctrine of equitable estoppel should not apply. The requirement is that a party asserting an estoppel must have relied to his detriment, which may, but need not, involve a lost benefit. If the doctrine is applicable when an

individual, relying on misleading information, neglects to do an act necessary to secure a benefit, it should also apply when an individual, relying on misleading information, takes an affirmative step that is harmful.

■. Division contends that it cannot be estopped from carrying out a legislatively mandated duty—the assessment of a tax at a rate required by law for participating employers. That argument begs the question: whether it should be estopped from treating employer as a participating employer if the elements of estoppel are present. Here, the referee's findings lead to the conclusion that employer's status as a participating employer was brought about by virtue of misleading, incomplete and incorrect information. It is that status which is alleged to have caused employer's harm. We see no difference between that circumstance and the case of a taxpayer who remains nonexempt because of the taxing authority's misleading conduct. In the latter case, it has been held that the taxpayer should be accorded the status of one to whom the exemption applies. *Pilgrim Turkey Packers, Inc. v. Dept. of Revenue, supra; Johnson v. Tax Commission, supra.* Here, if the elements of estoppel are present, employer should be accorded the status of one who did not participate in a shared work plan.

■ Division's final argument is that its actions did not amount to "affirmative misconduct," which is a prerequisite to the application of equitable estoppel; at worst, it argues, it innocently failed "to disclose fully the tax effects of the Work Share program." We agree with employer that the applicable standard in Oregon is not one of "affirmative misconduct." Even if that were the test, Division's conduct was more than an innocent failure to fully disclose information; it gave employer information that was material to its decision whether to participate, and that information was incomplete, misleading and incorrect.

In the cases that have discussed the doctrine a variety of terms have been used to describe the type of conduct necessary to give rise to equitable estoppel. The term most frequently used is "misleading." In *Pilgrim Turkey Packers, Inc. v. Dept. of Revenue, supra,* the court applied the doctrine when it found that exemption filing instructions were ambiguous enough to "mislead a reasonable person." 261 Or at 310. In

several Oregon Tax Court cases since 1974, the taxing authority's "misleading conduct" was held to be sufficient to give rise to an estoppel. *Portland Adventist Hospital v. Dept. of Rev.,* 8 OTR 381 (1980); *Liquid Air, Inc. v. Dept. of Rev.,* 8 OTR 159 (1979); *Cascade Manor, Inc., et al v. Dept. of Rev.,* 5 OTR 482 (1974). In *Howard v. Employment Division,* 63 Or App 227, 663 P2d 429 (1983), we concluded that the proof of misleading and ambiguous conduct was sufficient. There is no requirement of "affirmative misconduct."

Division argues that employer was warned repeatedly as to the possible adverse tax consequences of participation in a shared work plan. It is true that employer was warned of potentially adverse tax consequences; however, the warnings were so ambiguous and misleading as to amount to misrepresentations of the effect of its participation in the program. Publication 62 (6-82) contains the statement in two places that an employer's tax rate could be adversely affected "if more benefits are paid out than would have been in the case of a layoff." The application materials, immediately above the signature block, also contained the statement:

> "We understand that participation in the work share program could cause an adverse effect upon our unemployment insurance tax rate."

The application form contained the following information:

> "EFFECT OF WORK SHARE ON YOUR TAX RATE:

> "Benefits paid under a Work Share plan will be charged against an employer's account in the same manner as regular unemployment benefits.

> "Although your current tax rate won't be affected, this could have an adverse effect on future rates. Basically, if you are a high cost, high unemployment insurance tax rate employer the higher the potential tax increase. Generally speaking, *unemployment insurance tax rates may be increased by work share compensation if use of the program results in more payments than would have been the case with layoffs.*" (Emphasis supplied.)

Those statements and explanations alone would leave a reasonable employer with the distinct impression that, if it participated, its tax rate would go up only *if more benefits were paid than would have been paid in a case of a layoff.* That information was incorrect, incomplete and misleading,

because the maximum tax rate increased automatically for participants whether or not more benefits were paid under the plan than would have been paid in the case of a lay off. Even if the same or less benefits were paid under the plan, the tax rate would go up if the employer's benefit ratio exceeded 4 percent.

Ironically, under the wording of the statutory requirements for participation, it would appear that the benefits paid under a shared work plan would seldom, if ever, exceed the benefits which would have been paid during a layoff. Under a plan, the reduction in work hours must be no greater than the work hours the employer anticipated would be reduced by a layoff that is averted by participation in the plan. An employer would have little reason to believe that its tax rate would go up under that criterion, *unless* it was aware that its maximum tax rate would be higher if it participates. The application form itself must include a certified statement by the employer that

> "for the duration of the plan the reduction in the normal weekly hours of work of the employes in the affected group is instead of layoffs *which otherwise would result in at least as large a reduction in the total normal weekly hours of work."* Or Laws 1982, ch 2, § 9(1)(d).

Employer's taxes increased because the maximum tax rate was higher for participating employers, not solely because more benefits were paid. None of the information provided to employer revealed that eventuality as a possibility.

We hold that the Division is estopped from treating employer as a participating employer with respect to the statutory maximum tax rate and from assessing a tax for the tax year 1984 in excess of 4 percent of employer's taxable payroll.

Affirmed.