ROSEBURG FOREST PRODUCTS CO.,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
Charles G. Jones and all Claimants Involved
in Referee Decisions 89-S-1380-E, 89-E-1379 and
89-S-1533 Who Filed Timely Applications for Review,
*Respondents.*

(89-AB-1080, 89-AB-1081, 89-AB-1082; CA A62148)

802 P2d 73

Jeffrey M. Batchelor, Portland, argued the cause for petitioner. With him on the brief were Nelson D. Atkin II, Scott G. Fortmann and Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland.

Don S. Willner, Portland, argued the cause for respondents Charles G. Jones and all claimants involved in referee decisions 89-S-1380-E, 89-E-1379 and 89-S-1533 who filed timely

petitions for review. With him on the brief were Rebecca E. Swanson and Willner & Associates, Portland.

No appearance by respondent Employment Division.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P.J.

Roseburg Forest Products (employer) petitions for review of the award of unemployment compensation benefits by the Employment Appeals Board (EAB). We affirm.

This case arises from a labor dispute involving the International Woodworkers of America, Local 3-3346 (IWA) at employer's plant in Roseburg (Plant 3). Employer is a large forest products company. In 1983, employer and IWA signed a collective bargaining agreement that was to be effective from June 1, 1983, to June 1, 1986. Article XXIV of the agreement provides, in part:

> "This agreement shall be a *continuing agreement* and shall remain in full force and effect until the first day of June, 1986, *and shall remain in full force and effect to each succeeding June 1* thereafter subject to the following conditions:

> "This agreement may be amended or revised at any time by mutual agreement between the parties hereto.

> "Either party desiring to change the terms of this agreement shall notify the other party and present the changes desired in writing not less than sixty (60) days prior to June 1, 1986, or any succeeding June 1, and negotiations shall commence within ten (10) days after receipt of such notice by either party.

> "Upon completion of negotiations or any or all desired revisions, the agreed-to *revisions shall be incorporated into and become a part of this Agreement.*

> "Either party desiring *to terminate this agreement shall notify the other party in writing not less than ninety (90) days prior to June 1* of any year. However, both parties agree to meet in negotiations within ten (10) days after receipt of such notice by either party for purpose of negotiating possible renewal of this Agreement." (Emphasis supplied.)

In December, 1985, employer and IWA modified the agreement and extended it for two more years, through May 31, 1988. On March 28, 1988, more than 60 days, but fewer than 90 days, before June 1, employer notified IWA that it intended to revise and amend the agreement. On the same day, IWA notified employer that IWA also wished to amend it. Neither IWA nor employer gave notice of intent to terminate it. On January 5, 1989, the parties agreed that they had bargained to an impasse. On January 10, employer announced

that, at the start of the day shift on January 11, employer would unilaterally implement its final offer to the union. The new wage scale provided for a reduction in wages and fringe benefits at Plant 3. IWA announced that it intended to strike and established pickets around Plant 3.

IWA members applied for unemployment benefits, but Division denied their applications. IWA requested a hearing, and the referee affirmed the denial. The referee found that IWA members were disqualified under ORS 657.200(1), which provides:

> "An individual is disqualified for benefits * * * [if] the unemployment of the individual is due to a labor dispute which is in active progress at the * * * establishment * * * at which the individual is or was last employed or at which the individual claims employment rights by union agreement or otherwise."

IWA then sought review by EAB, arguing that its members were eligible for benefits under ORS 657.178(5):

> "An individual shall not be disqualified from receiving benefits * * * if the individual ceases work or fails to accept work when a collective bargaining agreement between the individual's bargaining unit and the individual's employer is in effect and the employer unilaterally modifies the amount of wages payable under the agreement, in breach of the agreement."

EAB reversed the referee's decision and held that employer's 60-day notice of intent to revise and amend was insufficient to terminate the agreement between IWA and employer, because, by operation of Article XXIV, the contract had already automatically been renewed and extended to June 1, 1989. EAB concluded that employer had, therefore, unilaterally modified wages payable under the agreement. Employer seeks review.[1] ORS 183.482(8)(a).

■    Employer claims numerous errors. We need only reach the initial assignment that EAB erred in finding that the bargaining agreement had been automatically renewed to June 1, 1989. Employer points to the language in the first part

---

[1] EAB also reversed the referee as to claimants who did not belong to IWA. Employer does not challenge those claims and only appeals the disposition of IWA members' claims.

of Article XXIV that states that the contract automatically renews, *"subject to* the following conditions * * *."* (Emphasis supplied.) Because one of the conditions—the desire to amend the agreement—was invoked in a timely fashion, employer argues, the contract did not automatically renew.

If a labor agreement is written in clear and specific language, courts must strictly apply that language. Judicial rewriting of contracts that are clear in both the language used and as to the situations covered would undermine the private bargaining process. *See Irwin v. Health & Welfare Fund,* 745 F2d 553, 557 (9th Cir 1984). The language in this contract is clear and unambiguous.

We give effect to the plain meaning of Article XXIV and reject employer's argument that a notice of intent to revise and amend results in a termination. Article XXIV deals with two separate subjects, termination and modification. If we were to adopt the interpretation that employer urges, the requirement of a 90-day notice for termination would be rendered superfluous. Additionally, the fourth paragraph, about amending the agreement, provides that "the agreed-to revisions shall be incorporated into and *become a part of this Agreement."* (Emphasis supplied.) That language implies that notice of an intent to change the agreement would not cancel it. Instead, the agreement would only be changed to the extent that both parties agree on revisions. The plain meaning of the section contradicts employer's interpretation of the contract.

EAB correctly held that, because neither employer nor IWA gave notice of intent to terminate the contract, it was automatically renewed for another year, even though the parties had entered into negotiations to amend it. Employer breached the agreement by unilaterally modifying its terms while it was in effect. Therefore, members of IWA were not disqualified from receiving unemployment benefits under ORS 657.178(5).

Affirmed.