Argued and submitted March 20, affirmed July 24, 1991

Robert CORDOVA,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Roseburg Forest Products/Roseburg Lumber Co.,
*Respondents.*

(90-AB-668; CA A65092 (Control))

Eric G. CORDOVA,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Roseburg Forest Products/Roseburg Lumber Co.,
*Respondents.*

(90-AB-720; A65093)

Calvin C. KEENEY,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Roseburg Forest Products/Roseburg Lumber Co.,
*Respondents.*

(90-AB-679; A65094)

Clarence L. SENGER,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Roseburg Forest Products/Roseburg Lumber Co.,
*Respondents.*

(90-AB-544; A65095)
(Cases Consolidated)

815 P2d 705

James J. Kolstoe, Eugene, argued the cause for petitioners. With him on the brief were William W. Bromley and Henderson & Bromley, Eugene.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Scott J. Fortmann, Portland, argued the cause for respondent Roseburg Forest Products/Roseburg Lumber Co. With him on the brief were Nelson D. Atkin and Lane Powell Spears Lubersky, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Claimants are members of the International Woodworkers of America (IWA) and are employed by Roseburg Forest Products and Roseburg Lumber Co. (Roseburg). In January, 1989, IWA members went on strike when IWA and Roseburg reached a bargaining impasse and Roseburg unilaterally implemented its final offer, which included a reduction in wages.

Claimants Robert Cordova, Keeney and Senger, like many other IWA members, filed "initial claims" for unemployment benefits during the strike. Claimant Eric Cordova filed his claim after the strike had ended. Claimants who sent in continued claim cards during the strike received denials from Division on the ground that they were disqualified from receiving benefits, because their unemployment was "due to a labor dispute." ORS 657.200(1).[1] The Board and, ultimately, this court, held that the strikers were exempt from disqualification under ORS 657.200 by ORS 657.176(5), which is set out, *infra. Roseburg Forest Products Co. v. Employment Div.*, 104 Or App 448, 802 P2d 73 (1990), *rev allowed* 311 Or 261 (1991).

Pending judicial review, Division continued to process the claims; it determined that many IWA members, including the claimants now before us, had not complied with Division's filing requirements and denied them benefits. Division also denied Keeney benefits for the weeks for which he *had* timely filed continued claim cards on the ground that he had not established his eligibility for benefits by seeking work, as required by ORS 657.155(1)(c). The referees affirmed Division.

Relying on our decision in *Employment Div. v. Western Graphics Corp.*, 76 Or App 608, 710 P2d 788 (1985), EAB held that, when misleading information had been given by Division and the claimants had relied on it to their detriment, Division was estopped from enforcing its deadlines for the filing of claims. With respect to all of these claimants, EAB held, in separate orders, that they had failed to establish estoppel. We affirm EAB on the estoppel question. We write

---

[1] ORS 657.200(1) provides that an individual is disqualified from benefits where "* * * the unemployment of the individual is due to a labor dispute."

only to address the contention made by Keeney that EAB erred in also concluding that he had not established his initial entitlement to benefits for the weeks for which he had timely filed continued claim cards, because he had not sought work during his unemployment caused by the strike.

ORS 657.155(1)(c) provides, in part, that

"[a]n unemployed individual shall be eligible to receive benefits with respect to any week only if the assistant director finds that:

"* * * * *

"(c) The individual is able to work, is available for work, and is actively seeking and unable to obtain suitable work."

Thus, in order to establish initial entitlement to benefits, a person must actively seek work. A person who otherwise qualifies for benefits may be disqualified for various reasons. ORS 657.176 provides, in part:

"(2) An individual shall be disqualified from receiving benefits * * * if the authorized representative designated by the assistant director finds that the individual:

"* * * * *

"(e) Failed without good cause to accept suitable work when offered.

"* * * * *

"(5) An individual shall not be disqualified from receiving benefits under paragraph (c) or (e) of subsection (2) of this section or under ORS 657.200 *if the individual ceases work or fails to accept work* when a collective bargaining agreement between the individual's bargaining unit and the individual's employer is in effect and the employer unilaterally modifies the amount of wages payable under the agreement, in breach of the agreement." (Emphasis supplied.)

Although Keeney was involved in a labor dispute, as we held in *Roseburg Forest Products Co. v. Employment Div.*, *supra*, he was not disqualified from receiving benefits, because employer had unilaterally modified the wages payable to him under the collective bargaining agreement. It is clear enough that he is not disqualified under ORS 657.176(2)(c) from receiving benefits for ceasing work; the question is whether he failed "to accept work" within the

meaning of the statute. He contends that ORS 657.176(5) excuses him from accepting *any* employment and that, because he could not be disqualified for refusing to accept employment, he should be excused from the requirement of ORS 657.155(1)(c) that he *seek* work.

If Keeney's reading of ORS 657.176(5) were correct, we would agree that compliance with the seek work requirement of ORS 657.155(1)(c) would be superfluous. If a person is not required to accept an offer of employment, it would be meaningless to require that he seek it. However, we do not believe that the legislature intended so broad an exception to the disqualification of striking workers. ORS 657.176(5) relieves the worker from being disqualified for ceasing work or failing to *accept* work under the circumstances described in that subsection. We think that it is clear that both phrases, "ceases work" and "fails to accept work," refer only to work with the struck employer and do not exempt workers from the seek work requirement of ORS 657.155(1)(c) applicable to all persons seeking unemployment compensation. That interpretation fulfills our duty to interpret the two subsections in a way that makes them compatible, if possible.

If there is any ambiguity, the legislative history supports our interpretation. The sponsor of the bill that was enacted as ORS 657.176(5) explained its purpose in written testimony:

"[The bill] would make it clear that employees who left work or refused to accept work when their employer unilaterally modified the wages due under a collective bargaining agreement should not be denied unemployment benefits. ORS 657.176 *would be amended so that employees in this position would not be deemed to have left work without good cause or to have failed without good cause to accept suitable work when offered.*

"This bill is necessary as the Employment Division has taken the position that employees would have to accept work at rates lower than established by the labor agreement if such rates were equal to those prevailing for similar work in the locality. Employees working under valid labor agreements are thus forced to forfeit the benefits of the bargain which their representatives have negotiated for them. This is clearly unfair and places a heavy burden upon employees who are forced to accept what is in essence a breach of

contract under pain of losing the unemployment benefits. *The Division's position interferes with the contractual relationship of the parties and places the power of the State of Oregon behind employers who would like to 'get out' of paying the wages which they have agreed to pay.*" Testimony of Michael Garone, Minutes, Senate Committee on Labor, Exhibit J, May 16, 1983. (Emphasis supplied.)

That testimony supports the view that ORS 657.176(5) was intended to change the practice of Division that required workers either to accept lower paying jobs from the employer against whom they were striking, if the offered wage was equal to the prevailing wage in the community, even though less than provided in the labor agreement, or be disqualified from receiving unemployment benefits. There is *no* indication that it was intended to free striking workers from the general requirements of ORS 657.155(1)(c) that are applicable to all persons seeking unemployment compensation. The function of ORS 657.176(5) was to remove the disqualification for workers on strike under the stated circumstances, thereby putting them in the group of unemployed persons entitled to compensation on the same basis as are other unemployed persons.

We conclude that ORS 657.176(5) only excuses a striking worker from having to accept work from the struck employer. Accordingly, Keeney was excused from accepting work from Roseburg, but not from seeking work from other employers. EAB's decision that Keeney is not entitled to benefits because he failed to seek work is correct.

Affirmed.