Argued and submitted October 19, reversed and remanded in part; otherwise
affirmed December 21, 1994

Jean Mary SIMONS, Deceased,
and her estate, by and through Floyd Dahlke,
the personal representative of
the estate of Jean Mary Simons,
*Plaintiff,*

*v.*

CITY OF PORTLAND,
a Municipal corporation,
*Respondent,*

*and*

James J. and Elizabeth A. BAUER,
*Appellants.*

(9110-06965; CA A78970)

887 P2d 824

Ralph C. Spooner argued the cause for appellants. With him on the briefs were Bruce H. Tompkins and Spooner & Much, P.C.

Harry Auerbach, Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

.

## EDMONDS, J.

Defendants James and Elizabeth Bauer (Bauers) appeal from a judgment dismissing their cross-claims against defendant City of Portland (city) and granting city's motion for indemnity against the Bauers.[1] We reverse.

Bauers own property on Southeast 62nd Avenue in Portland, at the intersection of 62nd and southeast Harold streets. At that corner, adjacent to Bauers' property, city has placed a stop sign for southbound traffic on 62nd. On June 20, 1990, decedent was driving south on 62nd, when she entered the intersection without stopping at the stop sign and hit a car that was traveling west on Harold. Decedent died as a result of the collision. Plaintiff, her personal representative, sued Bauers and city on her estate's behalf, alleging that the stop sign at the corner of 62nd and Harold was not visible. Plaintiff claims that the foliage from certain plum trees located on Bauers' property blocked visibility of the stop sign. Bauers cross-claimed against city alleging that, in the event that they were held liable to plaintiff, they were entitled to indemnity from city or, in the alternative, that they had a right to contribution from city because of city's negligence. City cross-claimed against Bauers alleging that, in the event it was found liable to plaintiff, Bauers were required to indemnify it.

On a pretrial motion by city for partial summary judgment, ORCP 47, the trial court ruled that if the jury found city and Bauers negligent, city would be entitled to indemnity from Bauers. The jury found both city and Bauers negligent. Thereafter, the trial court dismissed Bauers' cross-claims for indemnity and contribution and entered judgment requiring them to indemnify city. This appeal followed.

Bauers make four assignments of error, all relating to the court's summary judgment ruling. At issue in that ruling is the applicability of certain Portland City Code (PCC) provisions. PCC 20.40.080(C) provides:

---

[1] There are two judgments in this case: the money judgment that disposed of plaintiff's claims against both defendants, and the judgment that dismissed the Bauers' cross-claims of indemnity and contribution against the city, and granted the city's motion for indemnity. This appeal relates to the latter judgment. Plaintiff is not a party to this appeal.

"Every property owner shall be liable to any person who is injured or otherwise suffers damage by reason of the property owner's failure to maintain or prune trees as required by Titles 16, 17 and 20 of the Code of the City of Portland. Furthermore, every property owner shall be liable to the City of Portland for all expenses, including attorney fees, incurred by the City in defense of or paid by the City in settlement or satisfaction of any claim, demand, action or suit brought by reason of that property owner's failure to satisfy the obligations imposed by Titles 16, 17, 20 and 33 of the Code of the City of Portland."

*Former* PCC 16.26.240 (*since renumbered as* PCC 16.70.800 and *amended in* 1992), provided, in part:

"(A) It is unlawful for any person owning, occupying, or having control of any premises to allow any tree, shrub or plant to grow or remain in the triangular area between a street intersection and a line that intersects each of the intersecting property lines at points 15 feet from their intersection and extended to the curbs or intersecting streets for more than 10 days after receiving written notice from the Traffic Engineer that the existence of said tree, shrub or plant constitutes a hazard to the safe movement of traffic. Such a tree, shrub or plant hereby is declared to constitute a nuisance, and it is the duty of the person responsible therefor to remove the same or keep it trimmed to a height which does not constitute a traffic hazard in the opinion of the Traffic Engineer.

"(B) Unobstructed view of traffic signs. It is unlawful for any person, firm or corporation, owning, in possession of, occupying or having control of any premises within the City, to plant, maintain or allow any tree, shrub, bush or plant to partially or wholly obstruct the visibility of a stop sign, or regulator sign, for a minimum distance of 100 feet as viewed from the normal vehicular approach.

"Any and all such forbidden vegetation is hereby declared to constitute a nuisance, and it shall be the duty of the person responsible therefor to remove the same or trim and keep trimmed the same so that unobstructed view is maintained.

"(C) The person, firm or corporation, owning, in possession of, occupying, or having control of any such premises within the City, shall be liable to any person who is injured or otherwise suffers damage by reason of the failure to remove or trim such vegetation as required by Titles 16, 17 and 20 of the Code of the City of Portland. Furthermore, said person,

firm, or corporation shall be liable to the City of Portland for any judgment or expense incurred or paid by the City, by reason of said person, firm or corporation's failure to satisfy the obligations imposed by Title 16, 17 and 20 of the Code of the City of Portland."

City argues that the effect of the ordinances is to deprive Bauers of any right to indemnity or contribution, and to require them to indemnify city for any liability it incurred from Bauers' failure to comply with the ordinances. Bauers first argue that the trial court erred, because the Oregon Tort Claims Act (OTCA), ORS 30.260 *et seq,* preempts city ordinances, and that under the OTCA, Bauers have a right to contribution. They rely in part on *Pritchard v. City of Portland,* 98 Or App 226, 778 P2d 984 (1989), *aff'd on other grounds* 310 Or 235, 796 P2d 1184 (1990).

In *Pritchard,* city argued that *former* PCC 16.26.240 and PCC 20.40.080 granted tort immunity to it from any claim for an accident caused by a property owner's vegetation obstructing the view of a traffic sign. We held that ORS 30.265(1) and ORS 30.300 subject a public body to liability for its tortious actions and preempt any ordinances that purport to provide immunity. On review, the Supreme Court affirmed, holding that the ordinances did not exempt city from common law liability for the negligent failure to keep a stop sign clear of foliage and that it was unnecessary to reach the issue of preemption.

Bauers argue "this case squarely presents the issue that the Oregon Supreme Court did not reach in *Pritchard.*" They point out that ORS 30.265(1) says:

"Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function * * *."

ORS 30.300 says that the provisions in ORS 30.265 "supersede[] all * * * conflicting laws and ordinances on the same subject." Thus, a governmental body cannot escape tort liability by enacting ordinances that provide for immunity. Bauers also rely on *Beaver v. Pelett,* 299 Or 664, 705 P2d 1149 (1985), in which the court held that a claim for contribution is a tort claim under ORS 30.265(1), because that right "arises

out of [a public body's] tort liability." *See Scovell v. TRK Trans, Inc.*, 71 Or App 186, 189, 691 P2d 911 (1984), *rev on other grounds* 299 Or 679, 705 P2d 1144 (1985). In sum, they argue that city's ordinances that provide for indemnity effectively constitute a grant of immunity from its negligence, contrary to the provisions of the OTCA. Therefore, they conclude, "the court should rule that the ordinances are preempted * * *."

■    An ordinance is preempted when it conflicts with a state statute by permitting conduct that the statute prohibits. *City of Portland v. Jackson*, 316 Or 143, 850 P2d 1093 (1993). ORS 18.440 establishes the right to contribution among judgment debtors. Subsection (5) of that statute says that the right of contribution "does not impair any right of indemnity under existing law." It further provides that

> "the indemnity obligor is not entitled to contribution from the obligee for any portion of the indemnity obligation." ORS 18.440(5).

Thus, as indemnitors, Bauers have no right to contribution from city. Bauers' lack of any right to contribution means that there is no conflict between the ordinances and the OTCA. Furthermore, as the Supreme Court said in *Pritchard*, city's ordinances do not immunize city from liability, "but instead impose concomitant responsibilities and liability on abutting property owners." 310 Or at 240. We conclude that the OTCA does not preempt the indemnity provisions in the ordinances and that Bauers, as indemnitors, are not entitled to contribution.

■    The next assignments of error concern the trial court's granting of partial summary judgment on Bauer's cross-claim for indemnity. First, Bauers argue that the trial court erred because there were issues of fact as to whether they had violated the ordinances. In its ruling, the court said that city's right to indemnity was dependent on whether Bauers were found liable "by reason of the failure of [Bauers] to remove or trim vegetation as required by the City Code * * *." Because the court made its summary judgment ruling conditioned on the determination of that issue of fact by the jury, the trial court did not err.

Bauers then argue:

> "The trial court erred when it entered a Judgment on the indemnity issues when the issues were bifurcated from the underlying trial and there has never been a determination of the factual issues of whether [Bauers] should be liable to indemnify [city]."

They assert that, because the trial court submitted allegations of common law negligence and the violation of the ordinances to the jury and the jury returned a general verdict, it is impossible to determine whether the predicate to the imposition of the obligation to indemnify was met; *i.e.*, whether Bauers violated the ordinances. City responds that the allegations against Bauers all "related to the failure to keep the *stop* sign free from obstruction by the * * * trees, for which the City Code made [Bauers] responsible," and that necessarily, when the jury returned a verdict against Bauers, it found that Bauers had violated the ordinances.

The trial court gave the jury these instructions regarding plaintiff's claim against Bauers:

> "Plaintiff then alleges charges against the Bauers of negligence. * * * There they said the Bauers were negligent in failing to inspect the stop sign, trees and shrubs, to make sure the stop sign was not partially or wholly blocked. Then in failing to prune, trim or remove the trees and shrubs so they did not partially or wholly block the visibility of the stop sign. Then they failed in planting and maintaining or allowing the trees or shrubs to wholly or partially obstruct the visibility of the stop sign for a minimum distance of one hundred feet as viewed from the normal vehicular approach."

The trial court then instructed the jury on the ordinances, and further stated:

> "When I call your attention to any such statute or ordinance the violation of that statute or ordinance by a party constitutes negligence in and of itself unless you find from all of the evidence that such party proves that the party was acting as a reasonably prudent person under the circumstances."

At closing argument, counsel for Bauers argued:

> "[W]hatever technical violation, and this might have been a technical violation of one of the ordinances. I am not sitting here telling you that sign was one hundred percent clear of

any debris for one hundred feet * * *. What difference does it make if it is observable at one hundred feet or eighty feet or sixty-five feet. I think [a witness] said eighty-five feet he could see enough of it to recognize it as a sign. Are we going to say that this accident was caused by the fifteen feet that that sign might not have been visible enough to recognize it as a stop sign? I don't think so. * * *

*"[T]he allegations of negligence against the Bauers * * * is [sic] basically a violation of the ordinance.* The judge is going to tell you the violation of the ordinance or of the law, * * * is negligence and unless you further find that the person or persons were acting reasonably under the circumstances. I suggest to you that Mr. Bauer, who has been at the forefront of the team, if you will in this, was acting reasonably under this set of circumstances." (Emphasis supplied.)

■ The thrust of the court's instructions, as framed by Bauers' argument at trial, was that Bauers were not negligent if the jury found that (1) they did not violate the ordinances, or (2) even if they violated the ordinances, they acted reasonably because of city's conduct. Moreover, the only evidence presented at trial focused on whether the sign was partially or wholly unobstructed from 100 feet or less.[2] No evidence was presented as to how Bauers could have breached a common law duty outside of the obligations imposed by the ordinances. Thus, when the jury found Bauers negligent, it necessarily found that Bauers had violated the ordinances. We conclude that the factual predicate to city's right to indemnity was met in that respect.

Bauers' next assignment of error involves their claim that city is estopped from claiming indemnity from them, because of city's representations to them. The trial court ruled that city was not estopped, as a matter of law. Consequently, that claim was not presented to the jury.

In their cross-claim, Bauers allege:

---

[2] Illustrative of the testimony given was that of the Bauers' expert witness, who testified:

"Based on these measurements and the photographs which show the stop sign from a few different angles, it is my conclusion you can see certainly a portion of the stop sign from distances onto one hundred feet but you cannot see one hundred percent of the stop sign until you are very close to it."

"5.

"Prior to the accident referred to in plaintiff's Complaint, [Bauers] informed [city] that a potential visibility problem existed regarding the stop sign referred to in plaintiff's Complaint, and suggested possible means of alleviating the situation. After at least two such requests [city], through its personnel, informed [Bauers] that [city] was undertaking to remedy the situation. Prior to the involved accident [city] did in fact take some measures to correct any visibility difficulties, including replacing and moving the sign itself.

"6.

"By actively undertaking to alleviate the problem, and informing [Bauers] that the situation was or would be corrected, [city] waived, or is estopped to assert, any [city] ordinance that might require further affirmative action on the part of [Bauers].

"* * * * *

"8.

"Because [city] actively undertook to alleviate whatever problem existed, and because [Bauers] acted as instructed by [city], if [Bauers] are in any way held liable to plaintiff [city] should be required to indemnify [Bauers] for any damages awarded * * *."

■      Equitable estoppel is "employed to prevent one from proving an important fact to be something other than what by act or omission he has led another party justifiably to believe." *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 689, 669 P2d 1132 (1983). Bauers contend that city is estopped from recovering on any violations of the ordinance because, based on city's representations, Bauers reasonably believed that they were in compliance with the ordinance. City counters that estoppel is not available because, under its charter and ordinances, any representations made by city employees were beyond the scope of their authority. In support of its contention, city relies on PCC 20.40.080(F), which provides:

"Nothing in this Chapter shall be deemed to impose any liability upon any member of the City Council or the City, or any of its officers or employees nor to relieve the owner of any private property from the duty to prune trees in accordance with Titles 16, 17 and 20 of the Code of the City of Portland."

The language of PCC 20.40.080(F) is unambiguous. It prohibits the property owner from imposing "liability" on city representatives. It does not prevent the property owner from relying on an officer's or employee's representations regarding a claim for indemnity by city. In the latter situation, it is city that seeks to impose the liability, not the property owner.

■ Also, city argues that section 8-104 of the Charter of the City of Portland prohibits an argument based on an estoppel. That section says that city cannot be liable under a contract absent express written authorization to the agent making the contract. Bauers do not allege that a contract existed between city and themselves; they claim that city is estopped by its representations from claiming that they violated the ordinance. Accordingly, we reject city's arguments that their charter and ordinance provisions prohibit Bauer's estoppel claim.

■ City also argues that Bauers cannot prevail on an estoppel claim as a matter of law, because there is no evidence that they changed their position as a result of city's representations. According to city, Bauers continued to trim their trees in the same manner as they had before city's representatives made their statements. In order to prove an estoppel, there must be evidence that Bauers acted on city's representations and changed their position to their detriment by reason of city's conduct. *See Donahue v. Eugene Planing Mill*, 252 Or 543, 546, 450 P2d 762 (1969).

■ Bauers respond that there is a genuine issue of material fact regarding whether they acted on city's representations, which precludes summary judgment under ORCP 47C. They point to James Bauer's deposition, in which he explained that he had trimmed the trees according to the directions of a representative of city, and that thereafter he continued to hear the squealing of brakes. He reported that fact in a subsequent conversation with another representative of city:

> "I told him exactly what I thought about the tree trimming process, the fact it wasn't getting the job done. * * * I suggested at that time that he either, previous to the intersection they erect a stop-ahead sign, plant it in the parking strip a block further down the street.

"Number two, I suggested they lay a white band down in the street itself with the stop ahead sign on the street, like a lot of other intersections have, or he raise the short stop sign post up high enough out of the parking strip that the sign is visible * * *. I have seen them at different locations in the City where they put a larger sign on and they offset it towards the curb to make it more visible to the street.

"And out of those * * * options that I gave him, they opted for the latter. In other words, the larger stop sign offset * * *."

In his affidavit in opposition to city's motion, Bauer says:

"When the City employees came out and changed the stop sign, I understood this to be the City's method of solving the problem that I had reported to the City. It was my understanding that the City approved of the tree trimming I had done in the past and the City chose to address the problem another way. I was told by the City that its changes to the stop sign should take care of the problem, and I was led to believe that nothing further was required or expected of me. *As a result I continued the tree trimming as I had done before* and took no further action prior to the accident on June 20, 1990." (Emphasis in original.)[3]

It can reasonably be inferred from this evidence that Bauers "acted upon" city's representations by not taking further action to trim the tree, based on the belief that they were in compliance with the ordinances. "Detrimental reliance" for purposes of an equitable estoppel requires a material change in position. It can include reliance on misleading information that results in the loss of a benefit. *See Employment Div. v. Western Graphics Corp.*, 76 Or App 608, 614, 710 P2d 788 (1985). If Bauers' reliance on city's representations resulted in their exposure to liability under the ordinances, that is a sufficient "detriment" for the purposes of the rule. Thus, a genuine issue of material fact exists as to

---

[3] The city also argues that summary judgment was appropriate because Bauer's affidavit, in contravention of a motion for summary judgment, contradicted his pretrial deposition testimony. Under ORCP 47, if a party's affidavit is inherently inconsistent with the party's prior deposition testimony, the affidavit does not raise a genuine issue of fact. *See Henderson-Rubio v. May Dept. Stores*, 53 Or App 575, 583-85, 632 P2d 1289 (1981). However, in this case, Bauer's affidavit was included in the summary judgment record without objection. We decline to consider the city's argument, because it was not made below.

whether city is estopped to assert the violation of the ordinances.

■ Finally, city argues that, regardless of the summary judgment ruling, the underlying facts on which Bauers depend to support their theory of estoppel were tried to and rejected by the jury. At trial, Bauers were allowed to testify to their pruning efforts and city's representations regarding those efforts. City says that, based on the trial court's instructions to the jury, the only way that the jury could find Bauers liable was if there was no estoppel; *i.e.*, that Bauers did not act reasonably under the circumstances. The doctrine of estoppel is intended to protect only those who rely on the representations of others in instances when such reliance is reasonable. *Bash v. Fir Grove Cemeteries, Co.*, 282 Or 677, 687, 581 P2d 75 (1978).

■ We disagree with city's argument because, under the court's instructions, it was possible for the jury to find Bauers liable without even considering city's representations to Bauers. For example, the jury was told that it could find Bauers liable for failing to inspect the trees or for planting trees that obstructed the stop sign. The jury could have decided that Bauers were liable on either basis without determining whether their subsequent reliance on city's representations was reasonable. Moreover, the jury was not specifically instructed on the elements of estoppel.

In *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 788 P2d 428 (1990), the Oregon Supreme Court held that

> "where (1) more than one allegation of negligence is submitted to the jury; (2) one or more of, but not all, the allegations are unsupported by the evidence; and (3) it cannot be determined upon which allegation the jury based its verdict, this court has held that a new trial must be granted. That is, the court has followed a 'we can't tell' rule." 309 Or at 357.

This case is another "we can't tell" situation; the general verdict of negligence does not tell us if the jury necessarily resolved the estoppel issue. Therefore, we hold that the trial court erred in granting summary judgment, because there are issues of fact about whether city represented that Bauers

had complied with the ordinance and about whether Bauers changed their position in reliance on those representations.

To the extent that the parties have made other arguments on appeal, they are moot or were not preserved below, and we decline to discuss them.

Judgment for city on city's indemnity claim reversed and remanded; otherwise affirmed.