Argued and submitted December 11, 2008, affirmed March 24, 2010

Daniel AKEY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Appeals Board
07AB0040; A134746

228 P3d 1217

Neil N. Olsen argued the cause and filed the reply brief for petitioner. On the opening and reply briefs were Ursula A. Kienbaum and Littler Mendelson, P.C.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Claimant seeks judicial review, pursuant to ORS 657.282 and ORS 657.290(3), of an order on reconsideration of the Employment Appeals Board (board) affirming an administrative law judge's determination that claimant is not entitled to trade readjustment allowance (TRA) benefits under 19 USC section 2291 (2006 & Supp 2007).[1] The facts are not in dispute; thus, we review for errors of law. ORS 183.482(8)(a). Because we conclude that federal law precludes a determination that claimant is entitled to receipt of TRA benefits, we affirm.

Claimant's asserted entitlement to TRA benefits implicates interlocking federal statutes and regulations. Accordingly, before describing claimant's particular circumstances, we provide an overview of that scheme. The Trade Act of 1974, *see* 19 USC ch 12, created a program of trade adjustment assistance (TAA), *see* 19 USC §§ 2271-2322. The program was created "to assist individuals, who became unemployed as a result of increased imports, [to] return to suitable employment. The TAA program provides for reemployment services and allowances for eligible individuals." 20 CFR § 617.2. Among the allowances awarded under the TAA program are TRA benefits. *See* 20 CFR § 617.3(mm) (TAA refers to "the services and allowances provided for achieving reemployment of adversely affected workers, *including TRA*, training and other reemployment services, and job search allowances and relocation allowances" (emphasis added)); 20 CFR § 617.3(nn) (TRA refers to "a weekly allowance payable to an adversely affected worker with respect to such worker's unemployment"). Apparently, as the parties in this case posit, claimant's entitlement to TRA benefits is important because, upon a determination of such eligibility, he will then qualify for a health insurance tax credit.[2]

---

[1] Significant amendments to the pertinent federal statutes were made in 2009. Those amendments do not apply to this case. For that reason, we apply the versions of the federal statutes as contained in the 2006 United States Code and its 2007 supplement. However, amendments were not made to the pertinent federal rules; thus, our references to any federal rules are to the current versions.

[2] According to the board, "[c]laimant did not require training assistance, and he did not need the weekly benefits he might be eligible to receive through the TAA/TRA programs. Claimant did, however, need the health insurance tax credit * * *

Entitlement to TRA benefits is governed by 19 USC section 2291. As pertinent here, 19 USC section 2291(a)(5)(A)(i) and (ii) provided that one of the requirements to obtain TRA benefits is that a worker must be enrolled in training by a particular deadline, commonly known as the "8/16 week deadline." In very general terms, that deadline, prescribed by 19 USC section 2291(a)(5), required that, to be eligible for TRA benefits, the worker must be enrolled within an approved training program and his or her enrollment in that program must have occurred "no later than the latest of," *inter alia*, eight weeks after the issuance of a certificate of eligibility covering the worker or 16 weeks after the worker's most recent separation from qualifying employment.[3] However, and alternatively, 19 USC section 2291(c) provided for the waiver of those training requirements:

> "The Secretary may issue a written statement to an adversely affected worker waiving the requirement to be enrolled in training described in subsection (a)(5)(A) of this section if the Secretary determines that it is not feasible or appropriate for the worker, because of 1 or more of [certain enumerated reasons]."

---

available through the TAA program." During the hearing before the administrative law judge, David Carpenter, an authorized representative for the department, testified that the health insurance tax credit that claimant sought was contingent on his entitlement to TRA benefits. On review, neither party challenges the proposition that claimant had to be entitled to TRA benefits to obtain the tax credits that he sought. Thus, we do not address that issue on review and note that, notwithstanding the board's references to TAA/TRA, the primary issue on review is claimant's entitlement to TRA benefits.

[3] 19 USC section 2291(a)(5) provided, in part, that payment of a TRA shall be made to an adversely affected worker if certain conditions were met, including:

"Such worker—

"(A)(i) is enrolled in a training program approved by the Secretary under section 2296(a) of this title, and

"(ii) the enrollment required under clause (i) occurs no later than the latest of—

"(I) the last day of the 16th week after the worker's most recent total separation from adversely affected employment which meets the requirements of paragraphs (1) and (2),

"(II) the last day of the 8th week after the week in which the Secretary issues a certification covering the worker,

"(III) 45 days after the later of the dates specified in subclause (I) or (II), if the Secretary determines there are extenuating circumstances that justify an extension in the enrollment period[.]"

Ultimately, 20 CFR section 617.50(d) governs a state agency's determination concerning TRA entitlement. That rule provides:

"In making determinations or redeterminations under this section, or in reviewing such determinations or redeterminations under § 617.51, a State agency shall apply the regulations in this part 617. As to matters committed by this part 617 to the applicable State law, a State agency, a hearing officer, or a State court shall apply the applicable State law and regulations thereunder, including procedural requirements of such State law or regulations, except so far as such State law or regulations are inconsistent with this part 617 or the purpose of this part 617: *Provided, that, no provision of State law or regulations on good cause for waiver of any time limit, or for late filing of any claim, shall apply to any time limitation referred to or specified in this part 617, unless such State law or regulation is made applicable by a specific provision of this part 617.*"

(Emphasis added.)

In light of that federal statutory and regulatory framework, we turn to the pertinent facts, which we take from the board's order as supplemented by the uncontroverted submissions in the record. Claimant was a Washington resident who worked as a manager for JR Simplot Co. in Hermiston. On June 24, 2005, after claimant's employment with his Oregon employer ended, he contacted the Oregon Employment Department (the department) to obtain information about TRA benefits. At that time, as the board found,

"[c]laimant spoke to an adjudicator, Steele, who advised claimant to contact the Washington State employment agency for assistance, because claimant's address of record was in that state.[4] Steele gave claimant the phone number

---

[4] As the board indicated, "the Department shared some responsibilities for claimant's case with the Employment Security Department for the State of Washington * * *." Specifically, the board explained:

"The Department was acting on behalf of Oregon as the 'liable state,' and was therefore responsible for making all determinations, redeterminations, and decisions on appeals on all claims, including waivers and revocations of waivers * * *. The Employment Security Department, acting on behalf of Washington as the agent state, was merely responsible for cooperating fully with the Department and assisting it in carrying out its responsibilities."

In other words, as pertinent to this case, Oregon was the "liable state"—that is, Oregon was responsible for determining claimant's eligibility for TRA benefits and

for the Washington State TAA/TRA coordinator, and advised him to speak to a TAA representative about waiver and training. Steele told claimant he needed to file for a waiver within a certain time frame or he would not be entitled to TAA benefits."

Thereafter, on July 1, 2005, claimant requested a determination from the department of entitlement to TRA benefits. On July 11, 2005, the department sent a determination to claimant, stating, as pertinent to this judicial review, that to be eligible for TRA benefits, claimant needed to be enrolled in a training program or obtain a waiver no later than the sixteenth week from his most recent qualified layoff—that is, by August 6, 2005.

After receiving the department's determination, claimant took it to the Washington TAA representative. At their meeting, the representative

"told claimant that she understood the benefit he was seeking. She did not offer claimant a waiver form or otherwise advise him to complete a waiver form to ensure his eligibility to receive the [health insurance tax credit] benefit under the TAA program. Throughout the remainder of July and most of August, claimant continued to follow the recommendations he received from the Washington TAA representative, as he had been instructed by the Department's adjudicator, Steele."

Claimant did not obtain a waiver by the August 6 deadline.

However, on August 23, 2005, claimant met again with the Washington representative, who "realized that claimant's 16-week deadline had passed." At that point, the Washington representative apparently purported to grant claimant a 45-day extension of the deadline requirement and approved a waiver of the training enrollment requirement. Thereafter, claimant and the Washington representative met monthly through the end of 2005 "to review claimant's ongoing eligibility for the training waiver."

issuing any waiver. *See* 20 CFR § 617.26(a). Washington, on the other hand, was the "agent state"—that is, with regard to an interstate worker such as claimant, Washington was responsible for "providing [him] with TAA program information and assistance" and assisting Oregon in carrying out its responsibilities. *See* 20 CFR § 617.26(b).

In March 2006, the Washington representative spoke with an Oregon TAA representative. As a result of that conversation, the Washington representative determined that she had erroneously issued claimant the extension and waiver.[5] Accordingly, "[o]n March 13, 2006, the Washington TAA representative revoked claimant's 45-day extension, denied claimant's training waiver, and notified the Department of the revocation." Thereafter, on March 20, the department mailed to claimant a new benefit report "stating that he was not entitled to benefits under the TAA/TRA programs because he had failed to meet the deadline for enrolling in approved training or obtaining a waiver."

Claimant appealed. After a hearing before the administrative law judge (ALJ), the ALJ determined that claimant was required to be enrolled in a training program or obtain a waiver of training by August 6, 2005, and that, "[r]egardless of what occurred in the State of Washington, claimant failed to meet the deadline." Accordingly, the ALJ concluded that claimant was not eligible to receive TRA benefits.

Thereafter, claimant appealed to the board. Ultimately, in its order on reconsideration that is the subject of this judicial review proceeding, the board affirmed the ALJ. The board determined that claimant "remains ineligible for TRA benefits" notwithstanding that (1) the department had failed in its responsibility to provide a timely waiver by August 6, 2005, and (2) "[i]t appears from the record that claimant's ineligibility was the result of governmental confusion, miscommunication, and poor training, rather than any failure on claimant's part." Claimant's ineligibility was irremediable because "Federal Law does not permit the Department to waive the 16-week deadline for claimant or any other potential recipient of TAA/TRA. *See* 20 CFR 617.50(d)." In reaching that conclusion, the board determined that it could not use the doctrine of estoppel to assist claimant. Specifically, the board reasoned:

"We considered and rejected using the doctrine of estoppel to relieve claimant of the result in this case. Estoppel requires

---

[5] According to the board, under the circumstances here, claimant was not entitled to the 45-day extension and the Washington representative lacked authority to approve a waiver.

findings that an agency knowingly made a false or misleading statement of an existing material fact, and an individual justifiably and detrimentally relied upon that false or misleading statement. *Employment Division v. Western Graphics Corporation*, 76 Or App 608, 710 P2d 788 (1985). Because neither the Department nor its agent (the Washington TAA representative) made a false or misleading statement of an existing material fact, estoppel does not apply."

Claimant seeks judicial review.

On review, claimant does not challenge any of the board's factual findings. Nor does claimant dispute that federal law required that he either was to have been enrolled in training or to have obtained a waiver by August 6, 2005. Instead, claimant contends that, despite the fact that he had not obtained a waiver by the deadline, "this Court should find that the Department is estopped from asserting that its own failure to make the requisite training/waiver entry should disqualify [claimant] from benefits." As support for that contention, claimant invokes *Employment Dept. v. Furseth*, 140 Or App 464, 915 P2d 1043 (1996).[6]

As framed, claimant's estoppel argument implicates two inquiries. First, on this record, did claimant establish circumstances that, under Oregon law, would give rise to equitable estoppel against the department? Second, even if claimant proved the requisites of equitable estoppel generally, does federal law governing TRA benefits preclude the department from affording claimant the relief he seeks? That is, does federal law effectively preclude resort to principles of estoppel under Oregon law in these circumstances? For the reasons that follow, we conclude that the federal statute and regulatory scheme governing entitlement to TRA benefits precludes remedial resort to equitable estoppel.

We begin with *Furseth*, which claimant invokes, because the material distinctions between that case and this one are, ultimately, dispositive. In *Furseth*, after learning

---

[6] Claimant raises other, qualitatively different contentions in his reply brief on review. Those contentions were not raised in the opening brief on review. Accordingly, we will not consider them. *See Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 237 n 20, 12 P3d 507 (2000) (refusing to address argument raised for the first time in reply brief).

that the college classes for which he had registered had been postponed, the claimant spoke with agency representatives who assured him that he would continue receiving TRA benefits. 140 Or App at 468. Relying on those assurances, the claimant did not enroll in other classes. *Id*. Nevertheless, and notwithstanding its agent's representations, the department ultimately determined that the claimant was ineligible for additional TRA benefits because he was not enrolled in training. *Id*. at 469.

In challenging that denial before EAB, the claimant

"contended that the Department should nonetheless provide him with the additional benefits, because its representative misled him to believe that his benefits would continue automatically while he was on a waiver of participation in training, and that his failure to qualify was caused by the Department's failure to advise him correctly concerning eligibility requirements. EAB agreed and held that the doctrine of equitable estoppel compels the state to pay additional TRA benefits to claimant[.]"

*Id*.

On review, we agreed. We held that

*"application of the doctrine of equitable estoppel against the state does not effect a waiver of the participation-in-training requirement*; it merely prevents the state from withholding benefits to an individual who has failed to satisfy that requirement because of the state's failure to provide accurate advice."

*Id*. at 470 (emphasis added). Further, we reasoned that

"contrary to the state's contention, we hold that this claim estops only the state, not the federal government. Although the state acts as the agent of the federal government in administering the TRA program, federal law is clear *that the state is reimbursed only for benefits that are due under the Act; if benefits are paid that are not due, the state is obligated to restore those amounts to the federal government* or risk the termination of its agreement with the Secretary of Labor. Accordingly, the state bears the ultimate responsibility for its own errors in administering the Act."

*Id*. (emphasis added).

Thus, the gravamen of our holding in *Furseth* was that (1) state actors cannot be equitably estopped from acting

in compliance with federal law; (2) although allowing a waiver of the training requirement in *Furseth* would have violated federal law, the state's payment of benefits would not violate federal law—rather, it would merely require the state to reimburse the federal government to the extent of such payments; and (3) consequently, the state could properly be estopped from withholding benefits from the claimant.

*Furseth*, as so understood, is materially distinguishable from this case for at least two reasons. *First*, the deadlines to enroll in training or obtain a waiver, as prescribed in 19 USC section 2291, were enacted in 2002 and, thus, were not extant when we decided *Furseth* in 1996. Consequently, in *Furseth*, we had no occasion to determine whether the application of the doctrine of equitable estoppel would contravene 20 CFR section 617.50(d).

*Second,* as noted in *Furseth*, the ultimate consequence of the equitable estoppel was that the state was obligated to make monetary payments of benefits to the claimant, an obligation that did not violate federal law so long as the state bore sole responsibility for those payments. Here, however, claimant does not seek monetary relief; rather, he seeks a waiver of an eligibility requirement—a waiver that cannot be granted without violating federal requirements prescribing mandatory time lines. In sum, equitable estoppel cannot operate to effectively compel the department to render an untimely determination of program eligibility in derogation of federal law.[7]

Affirmed.

---

[7] Our analysis and disposition with respect to equitable estoppel, including the mandates of 19 USC section 2291(a)(5) and 20 CFR section 617.50(d), similarly precludes any allowance of relief under OAR 471-030-0055(2) in contravention of federal law. OAR 471-030-0055(2) provides:

"If the Director finds, as new facts not previously known to the Director or the designees specified in section (1) of this rule, that a claimant or an employing unit has suffered or would suffer substantial adverse effect because of:

"(a)  Misinformation provided to such party by an employee of the Employment Department; or

"(b)  Improper application of Employment Department Law or administrative rules by an employee of the Employment Department, the Director, or one of the designees specified in section (1) of this rule, may take appropriate action to restore to the injured party all rights and benefits which were improperly denied."