Argued and submitted November 2, 1995, decision of the Court of Appeals and judgment of the circuit court reversed, case remanded to the circuit court July 18, reconsideration denied September 24, 1996

Edward STOEGER,
*Petitioner on Review,*

*v.*

BURLINGTON NORTHERN RAILROAD COMPANY;
and Elf Atochem North America, Inc.
aka Atochem North American, Inc.,
*Respondents on Review.*

(CC 9304-02196; CA A82933; SC S42068)

919 P2d 39

Thomas M. Christ, of Mitchell, Lang & Smith, Portland, argued the cause for petitioner on review. With him on the petition were Douglas S. Querin and Stacy J. Hankin, of Bricker, Zakovics & Querin, P.C., Portland.

Larry E. Leggett, of Kroschel & Gibson, Bellevue, Washington, argued the cause and filed the brief for respondent on review Burlington Northern Railroad Company.

Jerard S. Weigler, of Lindsay, Hart, Neil & Weigler, Portland, argued the cause for respondent Elf Atochem Northern American, Inc. With him on the brief was Robin A. Jones, Portland.

Michael H. Simon, of Perkins Coie, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Anthony A. Allen, of Law Offices of Michael B. Dye, Salem, filed a brief *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

VAN HOOMISSEN, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

## VAN HOOMISSEN, J.

Plaintiff, an employee of defendant Burlington Northern Railroad Company (BN), brought this action alleging that he was injured while working on sidetracks owned by defendant Elf Atochem North America, Inc. (Atochem). The trial court granted defendants' motions for summary judgment on the ground that there was no genuine issue of material fact regarding defendants' alleged negligence. The Court of Appeals affirmed without opinion. *Stoeger v. Burlington Northern Railroad Co.*, 132 Or App 552, 889 P2d 391 (1995). For the reasons stated below, we reverse.

■■ On review of a summary judgment, this court determines whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Fields v. Jantec, Inc.*, 317 Or 432, 437, 857 P2d 95 (1993). We view the evidence and all reasonable inferences to be drawn from it in the light most favorable to the party opposing the motion. *Id.* That is true even as to those issues on which the opposing party would have the burden of proof at trial. *Welch v. Bancorp Management Advisors, Inc.*, 296 Or 208, 218, 675 P2d 172 (1983), *reh'g den* 296 Or 713 (1984).

Atochem owns and maintains sidetracks connecting its plant to BN's main line. BN owns and operates the trains that run on Atochem's sidetracks. A contract between Atochem and BN obligates Atochem to maintain its sidetracks and connecting switches.

At the time of his alleged injury, plaintiff was assisting in switching cars from one sidetrack to another in Atochem's yard. Plaintiff alleged in his complaint that he injured his back when he attempted to throw a switch for tracks numbered five and six, sometimes called the "five/six switch."[1] To do that, he had to bend down, lift a handle and

---

[1] Against defendant BN, plaintiff alleged these specifications of negligence:

"(a) Defendant [BN] required plaintiff to throw a switch which was defective, in that it did not move properly;

"(b) Defendant [BN] failed to inspect, detect, and remedy the defective switch;

"(c) Defendant [BN] failed to complain to defendant Atochem about the defective switch;

turn it sideways, or horizontally. He claims that the switch handle "stuck" or "hung up" while he was turning it and that the sudden added resistance caused him to strain various muscles and ligaments.

That same day, plaintiff reported his injury on a BN "Personal Injury Report" form. When asked to identify any "defects involved" in his injury, plaintiff checked a box marked "none." The next day, BN sent an inspection team to examine the "five/six switch." The team reported that the switch was properly lubricated and free of defects. Atochem's shipping supervisor and engineer also inspected the switch the day after the incident and found no defects.

Twenty-one days after the alleged injury, O'Dell, BN's investigator, recorded (with plaintiff's permission) an unsworn and uncounseled telephone conversation with plaintiff as follows:

"Q: [O'Dell] And what happened?

"A: When I reached down to grab the little switch, I reached down and grabbed the switch at—that goes into 5 and 6, and I reached to pull the handle they had some gravel there I guess. I must have slipped. I really honestly really don't know how exactly it did happen. I slipped and I felt a big sharp pain in the lower part of my back and I went down to my knees and I stayed there for a few minutes and I got up and it took everything I could do just to finish throwing that switch and continue on, but I stayed on the job until we went home that day, thinkin' I might get better instead of, uh, worse in any way.

"* * * * *

"Q: And was there any abnormal resistance to the switch?

---

"(d) Defendant [BN] failed to prevent its employees from working on defendant Atochem's premises;

"(e) Defendant [BN] failed to warn plaintiff about the defective switch."

Against defendant Atochem, plaintiff alleged these specifications of negligence:

"(a) It required plaintiff to throw a switch which was defective, in that it did not move properly;

"(b) It failed to inspect, detect, and remedy the defective switch; and

"(c) It failed to warn plaintiff about the defective switch."

"A: Honestly I don't remember. I didn't think there was. The switch wasn't a really hard switch, but it wasn't an easy switch. I mean you had to put a little effort into it, but uh, I don't remember. To be honest I just don't remember except when I felt the pain it went down.

"Q: Well, did you then get the switch thrown all right, or —

"A: Yes, I went ahead and threw the switch and we went ahead and did a spotted that car and got that other car and then we were ready to go back up towards Willbridge.

"* * * * *

"Q: Do you remember showing on [a personal injury report] * * * under the portion called 'Defects Involved.' You checked the box that said none?

"A: I don't remember, but uh, if you got it there, I guess so.

"* * * * *

"Q: Okay. Uh, would that [injury report] indicate that you felt that there was no defects in the switch or anything, or what?

"A: Well, I don't think there * * * Like I said the switch isn't the easiest switch to throw and it's not the hardest switch to throw out there for cryin' out loud. We've got lot harder switch [sic] out there that we turned in and I don't know, like I say I don't know how it happened or exactly what happened. I just don't know, Mr. O'Dell. It's just that—throw the switch. But I don't think that switch was a defective switch, no.

"Q: Okay, did you slip or trip, or anything like that?

"A: I think the main thing I must have slipped, but I don't recall. That's what I'm sayin'.

"Q: Oh.

"A: There's a little switch there and you're reachin' down, and you're tryin' to pull, you reach down and you've got a radio in one hand and I think, if I remember right I really don't, as I'm sayin' I can't—It happened so quick, I don't remember exactly what did happen.

"* * * * *

"Q: Okay. Did you understand all the questions I asked you here this morning?

"A: Yes, I did.

"Q: And is everything that you told me true and correct?

"A: Yes, it is."

Plaintiff brought this action against BN under the Federal Employers Liability Act, 45 USC § 51 *et seq*,[2] and against Atochem under the common law of negligence, alleging as to both that the switch was defective and that the defect caused his injury. Defendants moved for summary judgment, arguing that there was no evidence that the switch was defective and, therefore, that there was no evidence that they had been negligent. Defendants relied on plaintiff's statements to O'Dell that plaintiff did not think that the switch was defective or abnormally resistant. Defendants also argued that, even if the switch was defective, there was no evidence that they knew or, in the exercise of reasonable care, should have known, of the defect.

In response, plaintiff submitted an affidavit stating in part:

"As I explained in my statement to Burlington Northern Railroad claims agent O'Dell, I had lifted the handle of the 5/6 switch and was in the process of moving it from one notch to the other in an arching motion. At first, the switch handle moved easily. I had lifted the handle part of the way up when it suddenly hung up and became stiff and hard to throw. I felt pain in my back when the switch handle hung up. Because the pain was so severe, I fell to my knees and stayed there a few minutes. I then got up and was able to finish throwing the switch.

"I recall visually inspecting the switch as I walked towards it. I did not observe any broken or bent pieces nor

---

[2] 45 USC § 51 provides in part:

"Every common carrier by a railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment."

any mechanical problems with the switch. A switch is defective when there exists a broken or bent piece or a mechanical problem that results in abnormal resistance and prevents me from throwing the switch. Because I was able to throw the 5/6 switch, I did not consider the switch to be defective or to be abnormally resistant."

The trial court ruled that plaintiff's affidavit was "inadmissible" to contradict his ·earlier statements to O'Dell and granted defendants' motions for summary judgment. The Court of Appeals affirmed without opinion. We first address the trial court's ruling that plaintiff's affidavit is inadmissible to contradict his earlier statements to O'Dell.

■       ORCP 47 C provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

We find nothing in ORCP 47 that gives a trial court, in a summary judgment proceeding, the authority to rule that an affidavit of a party is "inadmissible" simply because it states facts that are inconsistent with a prior statement by the same party.[3] We hold that the trial court erred by excluding plaintiff's affidavit from consideration on summary judgment.

■       The next question is whether plaintiff's affidavit creates a "genuine" issue of material fact, sufficient to defeat defendants' motions for summary judgment. Defendants argue that plaintiff's affidavit fails to present a sufficient explanation for the inconsistency between his affidavit and his earlier statements to O'Dell and, therefore, summary judgment was proper. Defendants rely on a series of Court of Appeals opinions which held that where the nonmoving

---

[3] As to the requirement of inconsistency in prior statements used for impeachment, this court has stated that "any material variance" between the testimony of the witness and the witness' previous statement will suffice. *State v. Johanesen,* 319 Or 128, 135 n 6, 873 P2d 1065 (1994) (citing *Rigelman v. Gilligan,* 265 Or 109, 121, 506 P2d 710 (1973)).

party makes a statement that absolves the other party of liability, a later inconsistent statement does not create a genuine issue of material fact unless the nonmoving party provides an explanation for the inconsistency or asserts confusion. Plaintiff responds that nothing in ORCP 47 C requires an explanation of any factual inconsistency but that, if an explanation is required, the explanation in his affidavit is sufficient to defeat defendants' summary judgment motions.

As to the resolution of the foregoing issue, the court is equally divided. Three members of the court are of the view that no explanation of any contradiction between two statements from the same person is required in order to create a "genuine" issue of material fact. In their view, the contradiction does not keep the issue from being tried to a jury, because it is the role of a jury—not a judge acting pretrial—to determine where the truth lies. *See, e.g., Seeborg v. General Motors Corporation,* 284 Or 695, 700, 588 P2d 1100 (1978) (stating that, under ORCP 47 C, courts generally read "genuine" issue to mean "triable" issue). On the other hand, three members of the court are of the view that, once a person has given a statement on which a party relies as supporting that party's motion for summary judgment, a subsequent affidavit from the same person that simply contradicts the earlier statement, without in some manner offering an explanation for the contradiction, is insufficient to make out a "genuine" issue of material fact, as required by ORCP 47 C. *See, e.g., Henderson-Rubio v. The May Dept. Stores,* 53 Or App 575, 632 P2d 1289 (1981) (creating and applying rule). That disagreement does not affect the outcome of this case, however, because six members of the court agree that, even if it were appropriate to apply the more demanding *Henderson-Rubio* rule, plaintiff here has made out a genuine issue of material fact.[4]

---

[4] The 1995 legislature amended ORCP 47 C by adding the following wording:

"No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." Or Laws 1995, ch 618, § 5.

When O'Dell asked plaintiff whether there was any abnormal resistance to the switch, plaintiff responded that he did not remember but that, compared to other switches in Atochem's yard, it wasn't the easiest or the hardest switch to throw, and that he had to put "a little effort into it." Plaintiff stated to O'Dell that he did not believe that the switch was "defective." He added, however, that "[i]t happened so quick, I don't remember exactly what did happen."

In his affidavit, however, plaintiff explains that he did not consider the switch to be defective, because he did not see "any broken or bent pieces nor any mechanical problems with the switch," and that he did not consider the switch to be "abnormally resistant," because, ultimately, he was able to throw it. Plaintiff further explains that, according to his understanding, a switch can be free of defects and not abnormally resistant, and yet still "hang up" and become stiff and hard to throw. Plaintiff's affidavit, thus, created a genuine issue of material fact as to whether the switch malfunctioned. We conclude that, even if plaintiff were required to provide some explanation of the inconsistency between his earlier statement and his affidavit, he provided it. There was a genuine issue of material fact concerning whether the switch malfunctioned. The facts recited in plaintiff's affidavit create more than an issue, that is, some difference, as to a fact asserted by the moving party. They create a version of those facts that, if believed by the factfinder, would support a verdict for plaintiff.

---

The 1995 legislature further provided that the foregoing amendment applies "to all actions, whether commenced before, on or after the effective date of this Act." Or Laws 1995, ch 618, § 140(2).

There has been considerable debate between the defense and plaintiffs' bars about whether the 1995 amendment modified summary judgment law by shifting the burden of production to the nonmoving party, or whether it merely codified Oregon Supreme court case law on summary judgment. *Compare, e.g., Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996) (concluding that the amendment was intended to "federalize" summary judgment procedure) with Anthony A. Allen, "Construing the Amended Summary Judgment Rule," *OTLA Trial Lawyer*, 7 (Winter/Spring 1996) (concluding that the amendment is a codification of existing case law). However, because this case deals with the discrete issue of the legal effect of an affidavit that arguably is inconsistent with plaintiff's earlier statement, the amendment has no bearing on our analysis of the narrow issue presented in this case.

■ Defendant Atochem also argues that, even if the trial court erred in ruling that plaintiff's affidavit did not create a genuine issue of material fact, we should affirm the trial court's grant of summary judgment to Atochem on the independent ground that plaintiff's affidavit raised no genuine issue of material fact as to Atochem's negligence or as to causation. That is, Atochem asserts that, even if plaintiff's affidavit creates a genuine issue regarding the defectiveness of the switch, it does not create a genuine issue as to whether Atochem knew or should have known that the switch was defective, or whether the defect caused plaintiff's injury. We reject that argument.

Atochem, which owns and maintains the sidetracks connecting its plant to BN's main line, contracted with BN to maintain the sidetracks and switches. Inferentially, that duty could only be carried out by periodic inspections of the switches. There also is evidence in the record that switches that are properly maintained should not "hang up" and should glide easily, and that a properly maintained switch should be easy to throw without sustaining personal injury.[5]

---

[5] The record on summary judgment includes the affidavit of one of plaintiff's lawyers that states in part:

"I have talked with qualified experts familiar with switch maintenance, repair and inspection and who, if called to testify, would state the following:

"A switch, if properly maintained, should not hang up and become stiff and hard to throw. A properly maintained switch should slide easily from one notch to the other. Based upon the evidence in this case, the switch at issue hung up midway and therefore did not move properly when plaintiff threw it.

"The primary goal of a switch maintenance program is to prevent injury to individuals who throw switches. For a switch to operate properly, it must be regularly inspected and maintained. FRA rules regarding switch inspection are intended to insure that railroad employees are provided with a work place free from hazards caused by switches which are not properly maintained. A maintenance program that provides for inspection of switches only four times a year is not adequate under federal law or as compared to the maintenance practices of railroads like the Burlington Northern Railroad."

The record also includes the affidavit of Conrad Ibabao that states in part:

"I have worked for the Burlington Northern Maintenance of Way Department in various capacities in the Vancouver/Portland area since 1970. I have worked in the area which includes the Atochem Industry in various positions including as a track inspector, track maintainer, section foreman, assistant foreman, track foreman, machine operator and truck driver.

"Throughout the time I have worked in this area, I have heard complaints from Burlington Northern trainmen that the switches at Atochem, including

From the foregoing evidence and reasonable inferences to be drawn from it in the light most favorable to the plaintiff, a factfinder could infer that Atochem had not inspected the switches with sufficient frequency or that, if it had done so, it had failed to note the defect. Thus, a genuine issue of material fact is presented by the record on summary judgment as to whether the switch was defective and, if so, whether Atochem knew or should have known of the defect. Further, the affidavit presents a genuine issue of material fact on the question of causation. We conclude that plaintiff's affidavit, along with plaintiff's other evidence, defeats Atochem's motion for summary judgment. The trial court erred, therefore, in granting Atochem's motion for summary judgment.

In summary, we hold that the trial court erred in granting defendants' motions for summary judgment.

The decision of the Court of Appeals and the judgment of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings.

---

the 5/6 switch have not operated properly and have been difficult to throw. Either myself, or the trainmen making the complaints, have reported those problems to both Burlington Northern supervisors and to supervisors at Atochem."