Argued and submitted February 25, reversed and remanded in part; otherwise affirmed July 17, 2002

M.M. KNEPPER
and J.J. Knepper,
*Appellants,*

*v.*

Timothy BROWN, M.D.;
Timothy M. Brown, P.C.,
an Oregon professional corporation;
American Academy of Cosmetic Surgery
and American Society of Lipo-Suction Surgery, Inc.,
foreign corporations,
*Defendants,*

*and*

U.S. WEST DEX, INC.,
a foreign corporation,
*Respondent.*

9903-02495; A110172

50 P3d 1209

—————————

Kathryn H. Clarke argued the cause for appellants. With her on the briefs was Gregory A. Smith.

Michael H. Simon argued the cause for respondent. With him on the brief were Stephen M. Feldman and Perkins Coie LLP.

Before Haselton, Presiding Judge, and Armstrong and Brewer, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff, M.M. Knepper, appeals from the trial court's entry of an ORCP 67 B judgment after the court granted defendant US West Dex's motion for summary judgment against plaintiff's claims of fraud and conspiracy to commit fraud.[1] The gravamen of those claims is that defendant culpably published a Yellow Pages advertisement that misrepresented a physician's qualifications to perform liposuction procedures;[2] that plaintiff relied on that misrepresentation in retaining that physician; and that plaintiff was injured when the physician negligently performed liposuction on her. As described below, we conclude that summary judgment was improper on any of the three alternative grounds defendant advanced before the trial court. Consequently, we reverse and remand.

Viewed in the light most favorable to plaintiff as the nonmoving party, ORCP 47 C, the record discloses the following material facts. Defendant US West Dex is the publisher of Yellow Pages telephone directories, which include listings and advertisements for professional services, including medical services. The "Practice Guide Section" lists and groups physicians according to specialities. For example, there are separate headings and groupings for dermatology and for surgery, and the surgery category is, in turn, divided into 18

---

[1] The trial court also entered summary judgment against plaintiff's negligence claim against US West Dex. That ruling is not at issue on appeal.

In addition to the claims against defendant US West Dex, plaintiffs' operative third amended complaint alleged claims by plaintiff M.M. Knepper against Timothy Brown, M.D., for negligence/medical malpractice, fraud, conspiracy to commit fraud, conspiracy to commit battery, and violation of the Oregon Unlawful Trade Practices Act, and against defendant American Academy of Cosmetic Surgery for fraud, conspiracy to commit fraud, conspiracy to commit battery, negligence, and "aiding and abetting." The same complaint also alleged a claim by plaintiff's husband, J.J. Knepper, against all defendants for loss of consortium. None of those claims is at issue on appeal.

For convenience, "plaintiff" in this opinion refers to M.M. Knepper, and "defendant" refers to US West Dex.

[2] Liposuction is the "[m]ethod of removing unwanted subcutaneous fat using percutaneously placed suction tubes." *Stedman's Medical Dictionary*, 1022 (27th ed 2000). "Liposuctioning" is defined as "[r]emoval of fat by high vacuum pressure; used in body contouring." The type of procedure that plaintiff underwent, tumescent liposuction, is "performed after subcutaneous infusion of lidocaine solution and the use of microcannulae." *Id.*

subspecialities, including "Surgery, Plastic & Reconstructive." Every page of the Yellow Pages practice guide of doctors "Listed by Practice" includes the following notation:

> "For your convenience, the following doctors have chosen to list by type of medical practice. For information concerning physicians and/or qualifications, call the proper state agency or your local medical or osteopathic association."

Dr. Timothy Brown was a licensed physician and was board certified in dermatology and dermatologic surgery, but not in plastic and reconstructive surgery. Brown received training through the American Academy of Cosmetic Surgery in performing liposuction.[3] Before November 1996, Brown had performed liposuction procedures and had advertised in the Yellow Pages under the "dermatology" subcategory of the "Physicians & Surgeons, MD & DO" listing.

In late 1996, Brown told one of defendant's sales representatives, Mueller, that he was performing liposuction procedures. Mueller responded that, to increase his clientele, Brown should not only continue his advertisement under the "dermatology" subcategory but should also advertise under the "Surgery, Plastic & Reconstructive" subcategory. Mueller told Brown that the latter was the "best heading," because that is where potential liposuction patients would be most likely to look.

Brown's advertisement under the "Surgery, Plastic & Reconstructive" heading included the unamplified notation, "Board Certified"—that is, the ad did not expressly identify the area of certification.[4] Brown and his assistant, Sara Newman, discussed including that notation with Mueller because they believed that it would enhance Brown's appeal. From that discussion, Mueller knew, before the ad's publication, that Brown was not board certified in plastic and reconstructive surgery. Ultimately, defendant published advertisements for Brown under the "Surgery, Plastic &

---

[3] That training consisted of several weekend seminars, reading, and a three-day proctorship.

[4] Because of its indefinite reference to board certification, the advertisement violated one of defendant's internal standards, which required advertisers using the term "certified" to identify the certifying body.

Reconstructive" heading in both the 1996-97 and 1997-98 Yellow Pages.

Plaintiff's interest in liposuction began sometime in 1995, when she saw a television program describing the procedure and then started reading magazine articles on the subject. She subsequently consulted a physician whom she had seen on local television describing liposuction, but she decided not to have him perform the surgery both because she wanted to research the subject more and to consult with other physicians and also because one of her friends was unhappy with the results of liposuction performed by that physician.

In January 1997, plaintiff consulted the Yellow Pages under the heading of "Surgery, Plastic & Reconstructive" and saw Brown's advertisement. Plaintiff did not, however, contact Brown at that time. Thereafter in 1997, plaintiff consulted with three other physicians or their staff about liposuction. In November or December 1997, plaintiff attended a women's health fair where Brown had a booth and spoke with either Brown or his staff. At that time, plaintiff received materials describing Brown's experience, training, competence, and qualifications to perform liposuction.

After the health fair, plaintiff scheduled a consultation with Brown. In doing so, plaintiff relied on the contents of the Yellow Pages advertisement and materials from the health fair. Plaintiff would not have met with Brown but for her belief that he was board certified in plastic and reconstructive surgery. During the ensuing consultation, Brown made representations that confirmed plaintiff's understanding that he was board certified in plastic surgery. Brown also told plaintiff that he had performed "hundreds" of procedures similar to the one that she was considering.

Plaintiff retained Brown. He negligently performed tumescent liposuction and follow-up procedures, causing plaintiff serious physical and psychological injuries.

In 1999, plaintiff brought this action. Plaintiff's operative third amended complaint alleged, in pertinent part:

"Defendants [US West] and Brown conspired to mutually profit from Yellow Pages advertising by holding out defendant Brown as having education, training, experience, qualifications, and Board certification that they each knew, or defendant [US West] should have known, that defendant Brown did not have. Defendant Brown agreed to pay for, and defendant [US West] agreed to place the Yellow Page advertisement under physicians: 'plastic and reconstructive surgery' stating that defendant Brown was 'Board certified.' Such statement willfully and intentionally implied that defendant Brown was Board certified in plastic and reconstructive surgery. Defendant [US West], by virtue of its prior dealings with defendant Brown, knew or should have known that this representation was material, false, and misleading."

The gravamen of plaintiff's complaint against defendant is that its placement of Brown's advertisement in the "Plastic and Reconstructive" surgeons section of the Yellow Pages, along with the text in the advertisement indicating that Brown was "Board Certified," misled her to believe that Brown was board certified in plastic and reconstructive surgery. Because plaintiff was interested in undergoing liposuction only under the care of a plastic surgeon, her theory of causation was that, but for the misleading placement and text of Brown's advertisement, she never would have consulted him and, thus, would never have undergone the surgery that led to her injuries.

Defendant moved for summary judgment against plaintiff's fraud claims[5] on three alternative grounds: (1) Because defendant had included a "disclaimer" on each page of the Yellow Pages Professional Practice Guide,[6] plaintiff had no right to rely—at least not *vis-à-vis* defendant—on any representations in Brown's ad as to his professional qualifications, including board certification. (2) Plaintiff did not, in fact, rely on the Yellow Pages advertisement in concluding that Brown was a board certified plastic surgeon. In support of that argument, defendant presented deposition testimony

[5] As noted, defendant also successfully moved for summary judgment against plaintiff's negligence claim. *See* 182 Or App at 599 n 1.

[6] The material that defendant deems a "disclaimer" is set out above. *See* 182 Or App at 600. Plaintiff vigorously disputes that characterization.

from plaintiff that showed, in defendant's view, that plaintiff did not rely on the "Board Certified" text in the Yellow Pages advertisement. (3) There was not a sufficient causal link between the alleged misrepresentation and the alleged injury that resulted from Brown's performance of the liposuction procedures on plaintiff. In particular, defendant argued that its publication of the ad merely "facilitated" plaintiff's alleged injuries in a "but-for" sense, but that, under *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993), Brown's alleged intervening malpractice precluded any fraud-based liability for plaintiff's alleged injuries.[7]

In response, plaintiff disputed defendant's characterization of the significance and effect of the "disclaimer"— and asserted that the determination of whether she relied, or was entitled to rely, on the advertisement notwithstanding the "disclaimer" presented factual issues. In support of that contention, plaintiff proffered her own affidavit, which stated, in part: "I relied upon the yellow page ad in the Vancouver US West Dex yellow pages. I believed, based upon the location and content of Dr. Brown's ad, that Dr. Brown was a board certified plastic surgeon." Plaintiff further asserted that the sufficiency of the causal link between the alleged fraud and the alleged damage presented a question of fact.

In reply, defendant asserted that plaintiff's affidavit in opposition to summary judgment could not create a genuine issue of material fact as to reliance because plaintiff's statements in that affidavit contradicted her earlier sworn statements and did so without offering any plausible justification or explanation for that contradiction. As support for that position, defendant relied on *Henderson-Rubio v. The May Dept. Stores*, 53 Or App 575, 632 P2d 1289 (1981), and *Stoeger v. Burlington Northern Railroad Co.*, 323 Or 569, 919

---

[7] Defendant's memorandum in support of its motion for summary judgment included a single reference to *Criqui v. Pearl Music Company, Inc.*, 41 Or App 511, 599 P2d 1177 (1979), for the unadorned proposition that "but-for" causation is not a "sufficient causal nexus for imposing liability in a fraud case." Defendant's subsequent reply memorandum reiterated defendant's reliance on *Buchler* with respect to "substantial factor" causation and did not include any citation to *Criqui*.

P2d 39 (1996). With respect to causation, defendant acknowledged that causation issues are *"usually* for the jury," but reiterated its reliance on *Buchler* as the controlling exception to that proposition.

■■ The trial court, without explanation, entered judgment in favor of defendant pursuant to ORCP 67 B. Plaintiff appeals, arguing that defendant was not entitled to summary judgment on any of the three alternative grounds it raised in the trial court.[8] Defendant responds that any of those three grounds is independently sufficient to sustain the trial court's ruling.[9]

As explained below, we conclude that none of defendant's three alternative bases supports summary judgment. Accordingly, we reverse and remand for further proceedings.

■■ We turn first to plaintiff's argument concerning the "disclaimer," the text of which is set out above. The parties agree that, to establish fraud, a plaintiff must prove, *inter*

---

[8] Both the fraud and the conspiracy to commit fraud claims are at issue. Plaintiff contends, and defendant accepts, that the analysis of both claims is essentially the same regarding the issues presented on appeal. Thus, we assume for purposes of this opinion that the analysis concerning the conspiracy to commit fraud claim is identical to that of the fraud claim on which the parties focus their attention.

[9] In addition, defendant argues, for the first time on appeal, that summary judgment is appropriate because, even if there is a disputed issue of material fact as to whether defendant knowingly published a fraudulent advertisement, defendant cannot be liable in fraud for such knowing publication unless it published with an intent to cause harm or with reckless disregard of the consequences—and here there is no evidence that defendant published with such an intent to harm or reckless disregard. As support for that standard of culpability for fraud, defendant relies on *Goldstein v. Garlick*, 318 NYS2d 370, 374, 65 Misc 2d 538 (1971).

We decline to consider that alternative basis for affirmance. A prerequisite for such consideration is that "the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001). That is, "if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." *Id.* (emphasis in original). Here, in moving for summary judgment against plaintiff's fraud claims, defendant framed its analysis with reference to the elements set forth in *Conzelmann v. N.W.P. & D. Prod. Co.*, 190 Or 332, 225 P2d 757 (1950), without any reference to an additional "intent to injure" or "reckless disregard of the consequences" element—and plaintiff responded accordingly. Given that procedural posture, we cannot, and will not, assume that the record before us is the same one that would have been developed if defendant had raised its present argument, requiring proof of an additional element of fraud, before the trial court.

*alia*, that the defendant intended to induce the plaintiff to act in reliance on the misrepresentation and that the plaintiff justifiably relied on the misrepresentation. *See generally In re Brown*, 326 Or 582, 595, 956 P2d 188 (1998) (summarizing elements). The gist of defendant's argument concerning the "disclaimer" is that, because every page of the Yellow Pages practice guide included that language, plaintiff had no right to rely on the "Board Certified" representation in Brown's advertisement, *i.e.*, that any such reliance was not justifiable.

Plaintiff responds that the language of defendant's purported disclaimer does not, in fact, disclaim anything: "[I]t merely points out one source of further information." Rather, plaintiff asserts:

> "The language of the disclaimer is so carefully hedged, so artfully crafted (so as not to offend the advertising doctors by questioning their veracity, nor to disturb the confidence of the trusting public), that it disclaims nothing * * *. [I]t mumbles its message in a whisper, hoping that no one will hear."

Finally, and in all events, plaintiff contends that the effect of the "disclaimer" is a factual question for the jury.

We agree with plaintiff that the mere existence of the disclaimer does not, as a matter of law, compel a conclusion that a person may not reasonably rely on a representation in a Yellow Pages advertisement. Rather, the effect of the "disclaimer" with reference to justifiable reliance is a jury question. *McCathern v. Toyota Motor Corp.*, 160 Or App 201, 227-28, 985 P2d 804 (1999), *aff'd* 332 Or 59, 23 P3d 320 (2001), is analogous. In *McCathern*, we rejected an argument by a defendant in a products liability action that the existence of a warning on the visor of an automobile demonstrated that no jury question could exist as to whether an ordinary consumer could expect the vehicle not to roll over following abrupt steering and sharp turns. We stated:

> "Toyota's marketing representations of the 1994 4Runner making sharp turns and maneuvers justified a reasonable expectation that the vehicle could perform such maneuvers. *The question of whether, or to what extent, the visor warning*—which, after all, was yet another representation by

Toyota—*effectively subverted or negated such an expecta-tion in the mind of an ordinary consumer was a matter for the jury to decide.*" 160 Or App at 228 (emphasis added).

The same rationale applies here. As plaintiff notes, although the Yellow Pages included the "disclaimer" quoted above, they also contained statements that the Yellow Pages provided "the most complete information about all the businesses and stores in your area," and that the Yellow Pages "mak[e] it easy for you to select the one who can serve you the best." Such statements can certainly be viewed as promoting users' reliance on the contents of Yellow Pages advertisements. When allegedly "disclaiming" language is as indefinite as that at issue here, it must be viewed in the context of other representations made by defendant, and its meaning and effect are not susceptible to summary judgment. *Cf. Mobley v. Mannhein Services Corp.*, 133 Or App 89, 92, 889 P2d 1342, *rev den* 321 Or 47 (1995) (in a breach of contract action, summary judgment for defendant was appropriate only because the disclaimer at issue was unambiguous).[10]

We proceed to defendant's second alternative argument—that the summary judgment record discloses that plaintiff did not, in fact, rely on the Yellow Pages ad's representations about Brown's credentials. Before directly addressing the merits of defendant's position, we must first set the procedural stage.

Plaintiff's original complaint, filed in March 1999, named only Brown as a defendant. In her first amended complaint, filed in April 1999, plaintiff added as a defendant the American Academy of Cosmetic Surgery (AACS), alleging in pertinent part that AACS had falsely implied that its members had certain qualifications and skills, thus misleading patients into believing that its members were as qualified as plastic surgeons to perform cosmetic surgery.

---

[10] Defendant's reliance on *U.S. National Bank v. Fought*, 291 Or 201, 630 P2d 337 (1981), is unavailing. *Fought* concerned whether the "right to rely" element of a fraud claim must be pleaded "as an ultimate fact." The court concluded that it need not be so pleaded, because it was a conclusion of law; rather, all that was required to be alleged was reliance. *Id.* at 222. Thus, *Fought* did not suggest, as defendant would have it, that no genuine issue of material fact can exist concerning whether a plaintiff has a "right to rely" on a misrepresentation by a defendant.

In August 1999, plaintiff was deposed by Brown's counsel and, in that context, gave testimony in which she asserted that she had consulted the Yellow Pages looking for cosmetic surgeons. She did not recall whether all of the doctors she consulted were listed as cosmetic surgeons or as plastic and reconstructive surgeons. The following exchange took place:

"Q: And you can't recall what Dr. Brown was listed as, can you?

"A: I can recall that he was under the heading—

"Q: I'm not talking about the heading."

The parties then debated whether plaintiff should look at the advertisement to refresh her recollection, and did not return to the subject of headings. Plaintiff did not refresh her recollection by looking at the advertisement. When plaintiff was asked about the contents of Brown's advertisement, the following exchange took place:

"A: New Image Cosmetic Center or Surgery or—that was his ad.

"Q: That was his ad?

"A: I believe.

"Q: So what you remember from Dr. Brown's ad is something that says New Image Cosmetic Center?

"A: Yes.

"Q: Can you remember anything else that it said in Dr. Brown's ad?

"A: The phone number.

"Q: I mean, anything else describing his practice?

"A: I can't remember."[11]

In September 1999, plaintiff filed her second amended complaint. That complaint added defendant US West Dex as a defendant and also added new allegations

---

[11] Although defendant US West Dex was not yet a party, the record indicates that counsel for defendant attended the deposition.

against AACS—specifically that AACS had provided brochures to Brown for distribution to potential patients that contained false and misleading information as to the qualifications of AACS members.

In November 1999, AACS moved to dismiss for lack of personal jurisdiction on the ground that it did not have minimum contacts with the State of Oregon. In support of its motion, AACS provided deposition testimony from Brown that he had never obtained or made available to patients any brochures published by AACS. In response, in December 2000, plaintiff submitted an affidavit asserting that Brown had provided her with a brochure published by the AACS and further stating:

> "In deciding to allow Dr. Brown to perform liposuction surgery on my person, I read and relied upon the contents of the brochures published by Dr. Brown and by the American Academy of Cosmetic Surgery, as well as by representations made by Dr. Brown and the American Academy of Cosmetic Surgery as to Dr. Brown's experience, training, competence, and qualifications in plastic surgery.

> "In particular, and in part, I relied upon the representations contained within the above-referenced brochure, which included representations that Dr. Brown had undergone at least four years residency training in plastic and/or cosmetic surgical procedures, as well as a number of other representations and writings."[12]

In February 2000, defendant filed the motion for summary judgment that underlies this appeal. In support of that motion, defendant asserted that plaintiff's August 1999 deposition testimony and December 1999 affidavit demonstrated that plaintiff did not, in fact, rely on the "Board Certified" language in Brown's advertisement in the Yellow Pages. Defendant pointed particularly to plaintiff's statements about what she *did* rely on and her statements that she remembered the name of Brown's practice and his telephone number from the advertisement but nothing else describing his practice. Defendant also presented evidence that, when plaintiff first consulted Brown, she listed her referral source as a "Women's Show" rather than the Yellow

---

[12] The trial court ultimately denied AACS's motion to dismiss.

Pages. In opposing summary judgment, plaintiff submitted an affidavit that stated,

"Dr. Brown's ad, placed under the heading of 'Physicians and Surgeons, Plastic and Reconstructive,' stated that Dr. Brown was board certified. Based upon the location and content of Dr. Brown's ad, I reasonably believed that Dr. Brown was a board certified plastic surgeon.

"* * * * *

"As a result of my reliance on the ad for Dr. Brown's liposuction practice, published by US West DEX, as well as my reliance on the brochures I had been provided by Dr. Brown, I scheduled an appointment to be evaluated by Dr. Brown. Had Dr. Brown's yellow page indicated the true nature of his board certification, *i.e.* dermatology, I would not have scheduled this initial consultation with Dr. Brown. But for the content and location of Dr. Brown's yellow page ad, Dr. Brown would not have been provided with further opportunity to mislead me as to his qualifications.

"* * * * *

"In making the decision to initially contact Dr. Brown for the consultation, I relied upon the yellow page ad in the Vancouver US Dex yellow pages. I believed, based upon the location and content of Dr. Brown's ad, that Dr. Brown was a board certified plastic surgeon. In deciding to have Dr. Brown perform lipo-suction surgery on me, I relied upon the yellow page ad, the brochures handed to me by Dr. Brown and/or his agents, the video shown to me by Dr. Brown, the photo album shown to me by Dr. Brown, and Dr. Brown's own statements as to his experience in the number of procedures he had performed."

As noted above, in reply, defendant invoked *Henderson-Rubio* for the proposition that a plaintiff may not create a "genuine issue of material fact" for purposes of defeating summary judgment by contradicting her own previous statements. Plaintiff asserted that the statements in her later affidavit were not so clearly or blatantly inconsistent with her earlier statements as to fall within the rule of *Henderson-Rubio*. On appeal, the parties reprise those arguments. Thus, *Henderson-Rubio* is the key, and we begin with that case.

In *Henderson-Rubio*, the plaintiff sought to recover unpaid vacation and compensatory-time wages from his former employer. He stated in a deposition that he was never informed by his employer of any rules governing compensatory time and indicated repeatedly that the basis of his claim was his understanding of federal wage laws. 53 Or App at 578-79. On summary judgment, the employer provided evidence that the plaintiff was a salaried employee and argued that the plaintiff had no contractual basis for his claim for recovery of compensatory time wages. In response, the plaintiff filed an affidavit that stated that the employer's practice was to give compensatory time off for overtime worked during the period in question. *Id.* at 579. We framed the issue as follows:

> "[P]laintiff admits in his deposition that the basis for his claim of overtime compensation is his own understanding of the law. Thus, plaintiff defeats his own claim with respect to compensatory time. He then contradicts this statement in his affidavit and contends that his claim is based on store policy. Defendant denies that such a policy exists; therefore, a factual dispute exists. It exists, however, only because plaintiff himself has created an issue by contradicting his earlier statement. Is a contradiction created by the opposing party sufficient to raise a genuine issue of material fact?" *Id.* at 583.

In deciding that issue, we considered authority from several federal courts. In particular, we contrasted *Perma Research & Development Co. v. Singer Co.*, 410 F2d 572 (2nd Cir 1969), with *Kennett-Murray Corp. v. Bone*, 622 F2d 887 (5th Cir 1980). In *Perma Research*, the plaintiff was repeatedly asked during his deposition to specify the basis of his claim but "made no reference to a conversation between him and the defendant which supported his claim of fraud until he submitted an affidavit opposing defendant's motion for summary judgment." *Henderson-Rubio*, 53 Or App at 584, *citing Perma Research & Development Co.*, 410 F2d at 578. In *Kennett-Murray*, on the other hand, an affidavit in opposition to summary judgment was not "inherently inconsistent" with earlier deposition testimony and did not purport to raise a new matter but, rather, explained aspects of defendant's earlier deposition testimony, indicating that he had been confused during the deposition, and explaining in the affidavit

the source of his confusion. *Henderson-Rubio*, 53 Or App at 584-85, *citing Kennett-Murray Corp.*, 662 F2d at 893.

Ultimately, we adopted the "general rule" as stated in *Kennett-Murray Corp. Henderson-Rubio*, 53 Or App at 585. However, we concluded that the plaintiff's affidavit in *Henderson-Rubio* did not raise a genuine issue of material fact because that affidavit did not attempt to explain or add to his deposition testimony or assert that the plaintiff was confused at the time of his deposition. *Id.* We thus concluded that, because there was a direct conflict between the deposition testimony and the affidavit and no attempt to explain the inconsistency, the affidavit did not raise any genuine issue of material fact. *Id.* In so holding, we cautioned that our decision was limited to those circumstances in which "the two statements are *clearly inconsistent* and no attempt is made to explain the inconsistency." *Id.* at 585 (emphasis added).

*Taal v. Union Pacific Railroad*, 106 Or App 488, 490, 809 P2d 104 (1991), is also instructive—particularly in contrast to *Henderson-Rubio*. There, the plaintiff initially gave the employer's claims agent a recorded statement stating that he had noticed the hearing problem that was the subject of the Federal Employers' Liability Act (FELA) action "in the middle of 1985." If that statement were correct, the plaintiff's action would have been time-barred. Thereafter, in a deposition, the plaintiff testified that his earlier recollection had been incorrect and that, after looking at his doctor's statement, he realized that he saw the doctor about the hearing problem in November 1985, and recalled that he had seen the doctor several days after he had noticed the problem. 106 Or App at 490-92. The defendant moved for summary judgment on limitations grounds, arguing that the plaintiff could not create a genuine issue of material fact by using his deposition to contradict his earlier statement. The trial court agreed and granted summary judgment for the defendant.

On appeal, we reversed. We noted that the *Henderson-Rubio* rule was limited to cases "where the two statements are clearly inconsistent and no attempt is made to explain the inconsistency." *Id.* at 493, *quoting Henderson-Rubio*, 53 Or App at 585 n 6. In *Taal*, by comparison, the plaintiff did explain that his earlier recollection was wrong

and that his memory was refreshed by seeing his doctor's chart notes. 106 Or App at 493. Thus, we concluded that there was a genuine issue of material fact that could not be resolved on summary judgment. *Id.* at 494-95.

Finally, the Supreme Court's analysis in *Stoeger* also bears on our analysis. In *Stoeger*, the plaintiff, a railroad worker, was allegedly injured when he attempted to throw a track switch. The plaintiff subsequently brought an action under the FELA, alleging that the switch was defective in that it stuck, or hung up, when he attempted to throw it. On the day of the alleged injury, the plaintiff filled out a report form concerning his injury and, in response to a question about "defects involved," checked a box marked "none." *Stoeger*, 323 Or at 573. Three weeks after the accident, the plaintiff participated in an unsworn interview with a railroad inspector in which he said, "I reached down to pull the handle they had some gravel there I guess. I must have slipped. I really honestly really don't know how exactly it did happen." *Id.* When asked if there was "any abnormal resistance to the switch," the plaintiff replied: "Honestly I don't remember. I didn't think there was." *Id.* at 574. During the interview, the plaintiff also stated that the switch in question "isn't the easiest switch to throw and it's not the hardest," and that he "had to put a little effort into it." *Id.*

The employer subsequently moved for summary judgment based, in part, on the plaintiff's statements that he did not believe that the switch was defective or abnormally resistant. The plaintiff opposed summary judgment by submitting an affidavit in which he stated, "I had lifted the handle part of that way up when it suddenly hung up and became stiff and hard to throw. I felt pain in my back when the switch handle hung up." *Id.* at 575. The trial court entered summary judgment for the defendant, and we affirmed without opinion. *Stoeger v. Burlington Northern Railroad Co.*, 132 Or App 552, 889 P2d 391 (1995).

The Supreme Court reversed. On review, the parties framed the question presented in terms of the rule we announced in *Henderson-Rubio*:

> "[W]here [on summary judgment] the nonmoving party makes a statement that absolves the other party of liability,

a later inconsistent statement does not create a genuine issue of material fact unless the nonmoving party provides an explanation for the inconsistency or asserts confusion." *Stoeger*, 323 Or at 577.

The Supreme Court, however, was unable to resolve whether that formulation was correct because the six members of the court were evenly split on that question. *Id.* at 577.[13] Nevertheless, the court unanimously agreed that, regardless of whether *Henderson-Rubio* was a correct statement of the law, a genuine issue of material fact existed in that case. *Id.* In so holding, the court noted that the plaintiff's affidavit explained that he did not consider a switch that was abnormally resistant to be "defective" because he was, ultimately, able to throw the switch. *Id.* at 578. Thus, the court concluded, "even if plaintiff were required to provide some explanation of the inconsistency between his earlier statement and his affidavit, he provided it," giving rise to a genuine issue of material fact. *Id.*[14]

■ *Henderson-Rubio* continues to be the law of our court. Under the rule of that case, we must first determine if there was, in fact, a "clear inconsistency" between plaintiff's earlier statements—her August 1999 deposition testimony and her December 1999 affidavit—and her February 2000 affidavit in opposition to summary judgment. 53 Or App at

---

[13] The court explained:

"Three members of the court are of the view that no explanation of any contradiction between two statements from the same person is required in order to create a 'genuine' issue of material fact. In their view, the contradiction does not keep the issue from being tried to a jury, because it is the role of a jury—not a judge acting pretrial—to determine where the truth lies. * * * On the other hand, three members of the court are of the view that, once a person has given a statement on which a party relies as supporting that party's motion for summary judgment, a subsequent affidavit from the same person that simply contradicts the earlier statement, without in some manner offering an explanation for the contradiction, is insufficient to make out a 'genuine' issue of material fact, as required by ORCP 47 C." *Stoeger*, 323 Or at 577.

[14] The court did not directly address the apparent inconsistency between the plaintiff's original statement that he did not remember there being any abnormal resistence in the switch and his belief that he must have slipped, and his later statement that the switch became stiff and hard to throw and that he then felt pain that caused him to fall to his knees. Arguably, implicit in the court's holding is that those apparent inconsistencies did not defeat the plaintiff's assertion that genuine issues of material facts existed concerning the condition of the switch.

588 n 5. If, but only if, there was such an "inherent" inconsistency, *Simons v. City of Portland*, 132 Or App 74, 84 n 3, 887 P2d 824 (1994), would we then proceed to consider whether plaintiff's affidavit discloses the requisite justification or explanation.

■ We first turn to the question of whether plaintiff's earlier affidavit and deposition and her affidavit in opposition to summary judgment are, in fact, "clearly inconsistent." We find no contradiction between plaintiff's later affidavit and her having cited her source of referral to Brown as a "Women's Show." Plaintiff's own complaint avers that, between the time that she consulted the Yellow Pages and her consultation with Brown, she received materials from Brown or his staff at a health fair. That plaintiff considered her "referral source" to be the latter rather than the former does not contradict her statement that the placement and content of the Yellow Pages advertisement led her to believe that Brown was a board certified plastic surgeon.

■ Defendant also argues that plaintiff's statement in her December 1999 affidavit that she relied on AACS's brochures as well as representations made by Brown in deciding to have liposuction surgery contradicts her later affidavit. We disagree, for several reasons. First, plaintiff's December 1999 affidavit must be viewed in the context in which it was made, *viz.*, in opposition to AACS's motion to dismiss. The only legal issue raised by that motion was whether the Oregon courts had jurisdiction over AACS, and any statements by plaintiff concerning her reliance on the Yellow Pages would be entirely irrelevant to that legal issue. Given the legal issue, plaintiff would have had no reason to mention the Yellow Pages advertisement in that affidavit. Further, that affidavit asserted only that, *"in part*, I relied upon the representations contained within the above-referenced brochure[.]" (Emphasis added.) That statement left open the possibility that plaintiff had relied on things other than that brochure in deciding to have Brown perform liposuction surgery. Thus, there was no clear inconsistency between plaintiff's December 1999 affidavit and her statements in her affidavit in opposition to summary judgment.

Defendant also argues that plaintiff's February 2000 affidavit contradicts her August 1999 deposition testimony. In particular, defendant asserts that, while plaintiff testified in her deposition that she recalled only the name of Brown's practice and telephone number as being included in his Yellow Pages advertisement, her later affidavit states that she relied on additional information in the ad—including, as especially pertinent to her fraud claims, the location (under the "Surgery, Plastic & Reconstructive" listing) and contents ("Board Certified") of that ad—in concluding that Brown was a board-certified plastic surgeon. Thus, defendant contends, there is a clear and self-serving inconsistency between plaintiff's prior general, even vague, recollection of the Yellow Pages ad, and her far more precise recounting of the ad and her contemporaneous reliance, which she expressed for the first time in opposing summary judgment.

■ We first reject defendant's contention that there is a direct conflict between plaintiff's deposition testimony and her affidavit averments as to the ad's *location*. As noted above, 182 Or App at 607, during her deposition plaintiff attempted to state under what heading Brown was listed in the Yellow Pages—but Brown's counsel, who was conducting the examination, cut off her response, saying, "I'm not talking about the heading."

■ Nor do we find any clear inconsistency between plaintiff's failure to recall and mention the ad's "Board Certified" notation during her deposition and her subsequent recounting of her contemporaneous reliance on that statement. Again, the context and content of the deposition colloquy is illuminating. In particular, defendant's claim of a clear contradiction ultimately rests on an "I can't remember" response to an open-ended inquiry:

"A: New Image Cosmetic Center or Surgery or—that was his ad.

"Q: That was his ad?

"A: I believe.

"Q: So what you remember from Dr. Brown's ad is something that says New Image Cosmetic Center?

"A: Yes.

"Q: Can you remember anything else that it said in Dr. Brown's ad?

"A: The phone number.

"Q: I mean, anything else describing his practice?

"A: I can't remember."

Two aspects of that colloquy are especially striking. First, plaintiff was never asked specifically about her recollection of the "Board Certified" representation in the ad—indeed, there was no reference at all to that representation. Rather, the question was general and open-ended. Second, in a related sense, plaintiff did not deny noticing and relying on the "Board Certified" representation. Rather, when asked whether, at the time of the deposition, she could recall "anything else regarding his practice," she replied, "I can't remember."

With plaintiff's deposition testimony so placed in proper perspective, we emphasize the narrow scope of the question before us: This is not a case of a party originally swearing that "the light was green" and then later testifying that "the light was red." Nor is it even a case of a party who, when originally asked under oath "What color was the light?" responds, "I can't recall"—and who then later testifies, "the light was red." Rather, it is a case of a party who, when asked, "Can you remember anything else about the accident?" responds, "I can't recall"—and who then later testifies, "The light was red."

We conclude that an "I can't recall" response to an open-ended, "Is there anything else you remember?" question cannot be the predicate of a "clear inconsistency" under *Henderson-Rubio*. The requirement that the original and subsequent statement be "clearly inconsistent" necessarily presumes that both statements are "clear." An indefinite response to a catchall question is hardly clear.

We note, moreover, that none of our precedents has so extended *Henderson-Rubio*. Rather, *Henderson-Rubio*, *Taal*, and *Stoeger* all involved explicit contradictions of the "x" versus "not x" sort. *See also Gibson v. Pacific Summa Capital, Inc.*, 163 Or App 321, 326, 987 P2d 1240 (1999),

*rev den* 329 Or 589 (2000) (describing clear contradiction between the plaintiff's deposition testimony that he filed claim on behalf of all shareholders of a corporation and the plaintiff's affidavit in opposition to summary judgment stating that he had filed the claim on his own behalf). We decline defendant's invitation to dramatically expand *Henderson-Rubio*'s sweep. Consequently, we conclude that plaintiff's February 2000 affidavit raised triable issues of material fact as to her reliance on the "Board Certified" representation and her consequent belief that Brown was board certified in plastic and reconstructive surgery.

█ We turn finally to the third alternative basis for summary judgment: Defendant argues that summary judgment is proper because plaintiff, as a matter of law, cannot establish the requisite causation. The parties agree that, in order to prevail on a claim of fraudulent misrepresentation, a party must demonstrate that the misrepresentation is a "substantial factor" in producing the harm. *See generally Criqui v. Pearl Music Company, Inc.*, 41 Or App 511, 599 P2d 1177 (1979). The parties, however, take differing positions about how "substantial factor" causation is to be assessed in this context. Defendant posits that, as a matter of law, plaintiff cannot show "substantial factor" causation because plaintiff had no evidence that the "Board Certified" language in the Yellow Pages ad *caused* Brown to commit medical malpractice. Plaintiff asserts that defendant—and the *Criqui* case on which defendant relies—blur the distinction between causation and foreseeability.

██ Before turning to the specifics of the parties' arguments on causation, we clarify the meaning of "substantial factor" in the causation context. We agree with plaintiff that *Criqui* cannot be read expansively to require proof that the misrepresentation in the ad *caused* Brown to commit medical malpractice. In *Criqui*, the plaintiff purchased a distributorship based on a misrepresentation that the marketing program for the product was legal. 41 Or App at 513-14. He operated the business at a loss for several months, then sold it and sued the defendants for fraud. While some of the plaintiff's losses were recoverable, we held that the plaintiff's net operating losses were not:

"There was no evidence that the misrepresented matters on which plaintiff relied in any way caused the income of the business to be less or its expenses to be greater during the period plaintiff operated it. There may have been evidence from which the jury could have inferred that plaintiff would not have purchased the business had it not been for the representations, and he testified that he did rely on the representations. Such 'but for' causation, however, is not sufficient by itself to establish the link between the wrong and the damage claimed. *See Simpson v. Sisters of Charity of Providence*, 284 Or 547, 588 P2d 4 (1978). If it were, a person who had been induced to enter into any business by a fraudulent misrepresentation could recover for any loss he might thereafter suffer in the business, regardless of whether there was any other relationship between the loss and the misrepresentation. For example, a person who bought a restaurant (real property, equipment and goodwill) which was falsely represented to be free from termites could experience a net operating loss because he served bad food and still recover that loss in a fraud action based on the misrepresentation. While there is no sympathy for one who commits fraud, such attenuated causation is not a sufficient basis for holding one responsible to make up every loss that would not have occurred had there been no fraud." 41 Or App at 517 (footnote omitted).

We went on to quote a further example of attenuated "but for" causation insufficient to establish damages for fraud, quoting from William L. Prosser, *Law of Torts*, § 110, 732 (4th ed 1971):

"[I]f false statements are made in connection with the sale of corporate stock, losses due to a subsequent decline of the market, or insolvency of the corporation, brought about by business conditions or other factors in no way related to the representations, will not afford any basis for recovery. It is only where the fact misstated was of a nature calculated to bring about such a result that damages for it can be recovered." 41 Or App at 518 (internal quotation marks omitted).

*Criqui* does not support defendant's premise that plaintiff was required to prove that its ad caused Brown to commit malpractice. Rather, in order to demonstrate "substantial

factor" causation, plaintiff needed to show that "the fact mis-stated was of a nature calculated to bring about such a result that damages for it can be recovered." *Id.*[15]

With that background in mind, we turn to the parties' arguments concerning causation in this case. Defendant asserts that plaintiff cannot make the necessary showing for three reasons: (1) Plaintiff's evidence does not establish that she relied on the "Board Certified" representation in Brown's ad in *selecting* Brown to perform the surgery, as opposed to merely deciding to *consult* with him. (2) Even if the ad's misrepresentation caused plaintiff to retain Brown to perform her surgery ("transaction causation"), there is no evidence that that misrepresentation caused plaintiff's injury ("loss causation"). (3) In all events, under *Buchler*, Brown's intervening malpractice precluded any imposition of fraud liability based on defendant's publication of the fraudulent ad.

We decline to consider either of defendant's first two causation-related contentions as an alternative basis for affirmance because neither of those contentions was raised in the trial court—and if it had been, it might well have affected the development of the record. *See Outdoor Media Dimensions Inc.*, 331 Or at 660. In moving for summary judgment, defendant did not assert that plaintiff's deposition testimony and affidavit statements failed to establish that she relied on the "Board Certified" representation in selecting Brown to perform the liposuction surgery. In particular, defendant did not contend that there was some meaningful, potentially dispositive, distinction between (1) reliance and causation with respect to contacting and consulting with Brown; and (2) reliance with respect to retaining Brown to perform the surgery. Given the overlap between consultation and retention, it is entirely plausible that, if defendant had asserted that distinction, plaintiff might have responded with a supplemental

---

[15] Plaintiff correctly observes that foreseeability (what might happen) and causation (what did happen) are analytically distinct. *See generally Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 22, 734 P2d 1326 (1987). *Criqui* does not undermine in any way the notion that questions of foreseeability are generally factual questions for a jury. The question presented in *Criqui* was whether the plaintiff had presented sufficient evidence of causation to support the jury's finding, not whether the plaintiff could get to the jury in the first place.

affidavit clarifying that she materially relied on the Yellow Pages ad with respect to both consultation and selection.

Defendant's second argument, pertaining to a distinction in fraud between "transaction causation" and "loss causation" is also raised for the first time on appeal. As support for that contention, plaintiff relies on *Criqui*—which defendant cited only once, and in the most cursory fashion, before the trial court, *see* 182 Or App at 603 n 7—and *Continental Grain Co. v. Meridien International Bank*, 894 F Supp 654 (SD NY 1995), which it did not cite to the trial court at all. Indeed, the terms "transaction causation" and "loss causation" do not appear in defendant's summary judgment pleadings.

Even more fundamentally, there is, again, the problem of record development. As we understand defendant's present argument, it is that plaintiff could not show a sufficient causal connection between the nature of the misrepresentation (that Brown was board certified in plastic and reconstructive surgery) and the nature of plaintiff's injuries from Brown's malpractice. That is, that although the difference between being board certified in dermatology (which Brown was) and being board certified in plastic and reconstructive surgery (which he wasn't) may have caused plaintiff to retain Brown,[16] plaintiff failed to adduce any evidence that that difference, which was the substance of the misrepresentation, caused the malpractice. Rather, defendant asserts, it was incumbent upon plaintiff to adduce evidence that the malpractice would not have occurred if Brown had been board certified in plastic and reconstructive surgery—and, because plaintiff failed to meet that *prima facie* burden, summary judgment was proper. Even beyond that, defendant contends that, regardless of plaintiff's failure to proffer any such evidence, the *only* evidence on that matter in the summary judgment record, a *Newsweek* article on liposuction that defendant offered without objection, indicates that board certified dermatologists and board certified plastic and

---

[16] Defendant disputes even that causal relationship, but implicitly acknowledges that, viewed most favorably to plaintiff, the record could support such "transaction causation."

reconstructive surgeons are, generally, equally competent to perform the procedures that plaintiff experienced.

Again, the difficulty is that, if defendant had raised that contention with respect to the fraud claims, the factual record might have been developed differently. If defendant had clearly asserted, with respect to the fraud claims, that plaintiff was obligated to present evidence that the nature of the malpractice was of the sort that a board certified plastic surgeon would not have committed, it is possible that plaintiff would have responded by proffering such evidence. We cannot know whether that would have occurred—but we do know that, because defendant raised the contention for the first time on appeal, plaintiff was not given that opportunity in opposing summary judgment against her fraud claims. Consequently, and consistently with *Outdoor Media*, we do not consider defendant's "loss causation" argument.[17]

██ ██ We proceed then to the third, *Buchler*-based causation argument, which was asserted to the trial court. Defendant asserted before the trial court, and reiterates on appeal, that its participation in the publication of Brown's fraudulent ad could not be a substantial cause of plaintiff's injuries because those injuries were "actually caused by an unintended intervening force (*i.e.*, Dr. Brown's alleged medical malpractice)." Invoking *Buchler*, defendant reasons:

> "Dr. Brown's Yellow Pages ad may have 'facilitated' plaintiff's alleged injury only in the sense that plaintiff may have first located Dr. Brown, along with several of the other doctors she interviewed, by seeing Dr. Brown's ad in the Yellow Pages. To paraphrase the Oregon Supreme Court in *Buchler*, however, the mere *facilitation* of an unintended adverse result, where the intervening professional medical negligence of another person is the harm-producing force, does not *cause* the harm, or is not a *substantial* factor in bringing about the harm, so as to support liability. Applying the principles of *Buchler*, therefore, Dex did not *cause* plaintiff's alleged injury (and was not a *substantial* factor in bringing it about)." (Emphasis in original.)

---

[17] In disposing of defendant's "loss causation" argument on the stated grounds, we imply no view as to substantive merits of that analysis in this fraud/medical malpractice context, or any other.

Defendant's argument misapprehends—and, effectively, mutates and "morphs"—*Buchler*. *Buchler* concerned the Corrections Division's alleged liability for criminal acts committed by an escaped inmate. The Supreme Court's analysis and holding is expressly limited to addressing the proper relationship between prior negligence in that context and subsequent "intervening intentional criminality of another person":

> "While it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity. In other words, in our society it is foreseeable that crimes may occur and that the criminals· perpetrating them may cause harm. Thus, in a general sense, it is foreseeable that anyone whose conduct may in any way facilitate the criminal in committing the crime has played some part in the resulting harm. But mere 'facilitation' of an unintended adverse result, *where intervening intentional criminality of another person is the harm-producing force*, does not cause the harm so as to support liability for it." *Id.* at 511-12 (emphasis added).

Nothing in *Buchler* or any of its progeny suggests that its reasoning can, or should, be extended to cases other than those involving intervening intentional criminal conduct.[18] No case has ever applied *Buchler* to preclude tort liability based on intervening, merely negligent conduct.

---

[18] *See, e.g., Kim v. Multnomah County*, 328 Or 140, 970 P2d 631 (1998); *McAlpine v. Multnomah County*, 166 Or App 472, 999 P2d 522 (2000); *Brown v. Washington County*, 163 Or App 362, 987 P2d 1254 (1999), *rev den* 331 Or 191 (2000); *Washa v. Oregon Dept. of Corrections*, 159 Or App 207, 979 P2d 273, *rev allowed* 329 Or 479 (1999); *Cunningham v. Happy Palace, Inc.*, 157 Or App 334, 970 P2d 669 (1998), *rev den* 328 Or 365 (1999); *Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 914 P2d 16 (1996).

Indeed, in *Cunningham*, we held that, even in cases involving intervening intentional criminal conduct, there could still be liability based on the antecedent negligence:

"If it were reasonably foreseeable that plaintiff would come to harm as a result of criminal acts by others, then defendant can be held liable for that harm.

"\* \* \* \* \*

"[I]n order to survive a defendant's motion for summary judgment in a case involving the criminal acts of third parties, there must be facts in the record to

Indeed, to so extend *Buchler* would abrogate the well-established rule that "the negligence of a third person is not unforeseeable as a matter of law." *Becker v. Barbur Blvd. Equipment Rentals, Inc.*, 81 Or App 648, 726 P2d 967 (1986), *rev den* 303 Or 535 (1987). *See also Link v. Massee, Slate*, 277 Or 715, 561 P2d 634 (1977) (rejecting argument that intervening negligence was superseding cause as a matter of law); *Hills v. McGillvrey*, 240 Or 476, 402 P2d 722 (1965) (holding that "it was for the jury to decide" whether harm from superseding negligence was "a foreseeable result" of the defendant's antecedent negligence). In sum, neither *Buchler* itself nor any principled extension of its reasoning supports the entry of summary judgment against plaintiff's fraud-related claims.

We thus conclude that none of defendant's arguments pertaining to misrepresentation, reliance, or causation supports the entry of summary judgment. Accordingly, we reverse the entry of summary judgment against plaintiff's fraud-related claims.

Judgment in favor of defendant US West Dex, Inc., against plaintiff M.M. Knepper's fraud and conspiracy to commit fraud claims reversed and remanded; otherwise affirmed.

---

support a conclusion that the defendant could have reasonably foreseen, as a result of the defendant's negligence, an unreasonable risk of such danger to the plaintiff." 157 Or App at 338-39.

*See also Washa,* 159 Or App at 225 n 23 (citing *Cunningham* for the proposition that a negligent defendant can be held liable for the intervening criminal act of a third party where "(1) the defendant's conduct did more than merely facilitate the criminal act, and (2) the criminal act of the third person was a reasonably foreseeable consequence of the defendant's conduct)."